## UNITED STATES COURT OF INTERNATIONAL TRADE

### BEFORE:  THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| SOUTHERN CROSS SEAFOODS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Court No. 22-00299 |
| | ) |
| UNITED STATES and | ) |
| NATIONAL MARINE FISHERIES SERVICE, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## <u>DEFENDANTS' MOTION TO DISMISS</u>

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

L. MISHA PREHEIM
Assistant Director

SOSUN BAE
Senior Trial Counsel
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington D.C. 20044
Tel: (202) 305-7568
Fax: (202) 514-8640
Email: Sosun.Bae@usdoj.gov

Dated: December 19, 2022          Attorneys for Defendants

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

QUESTIONS PRESENTED..................................................................................... 1

BACKGROUND ................................................................................................... 2

ARGUMENT ........................................................................................................ 4

    I.     Standard Of Review ............................................................................... 4

    II.    This Court Lacks Jurisdiction Over Southern Cross's Claims ............... 5

          A.    The Denial Of The Preapproval Application Does Not Constitute
                An Embargo ................................................................................... 5

          B.    Exclusive Jurisdiction Over Actions Relating To The CCAMLR Is
                Vested In The District Courts .................................................... 8

               1.    Congress Was Presumptively Aware Of 28 U.S.C.
                        § 1581(i) When Enacting 16 U.S.C. § 2440 ................................... 8

               2.    Any Argument Concerning Repeal By Implication Does
                        Not Support Southern Cross ........................................................ 9

               3.    *Orleans* Does Not Dictate The Outcome Of The
                        Jurisdictional Inquiry ................................................................. 10

CONCLUSION.................................................................................................... 13

## TABLE OF AUTHORITIES

**CASES**                                                                      **PAGE(S)**

*California Industrial Products, Inc. v. United States*,
    436 F.3d 1341 (Fed. Cir. 2006)......................................................................... 8

*Citizens For A Better Environment*,
    523 U.S. 83 (1998)............................................................................................. 4

*Inspired Dev. Grp., LLC v. Inspired Prod. Grp., LLC*,
    938 F.3d 1355 (Fed. Cir. 2019)......................................................................... 4

*Inter-Coastal Xpress, Inc. v. United States*,
    296 F.3d 1357 (Fed. Cir. 2002)....................................................................... 10

*K Mart Corp. v. Cartier, Inc.*,
    485 U.S. 176 (1988) ....................................................................................... 5, 7

*McNutt v. General Motors Acceptance Corp. of Indiana*,
    298 U.S. 178 (1936)............................................................................................. 4

*Mississippi ex rel. Hood v. AU Optronics Corp.*,
    571 U.S. 161 (2014)............................................................................................. 8

*Morton v. Mancari*,
    417 U.S. 535 (1974)........................................................................................... 10

*Native Federation of Madre De Dios River and Tributaries v. Bozovich Timber Products, Inc.*,
    491 F. Supp. 2d 1174 ...................................................................................... 6, 7

*Orleans International, Inc. v. United States*,
    334 F.3d 1375 (Fed. Cir. 2003)................................................................... 10, 11

*Shoshone Indian Tribe of the Wind River Reservation v. United States*,
    672 F.3d 1021 (Fed. Cir. 2012)......................................................................... 4

*Steel Co. v. Citizens For A Better Environment*,
    523 U.S. 83 (1998)............................................................................................. 4

*Vivitar Corp. v. United States*,
    761 F.2d 1552 (Fed. Cir. 1985)....................................................................... 11

## STATUTES

7 U.S.C. § 2908(b) ...................................................................................................... 11, 12

16 U.S.C. § 2431 ........................................................................................................... 1, 2, 6

16 U.S.C. § 2435(3) ...................................................................................................... 3, 7

16 U.S.C. § 2436 ........................................................................................................... 2

16 U.S.C. § 2440 ........................................................................................................... *passim*

28 U.S.C. § 1340 ........................................................................................................... 9

28 U.S.C. § 1356 ........................................................................................................... 9

28 U.S.C. § 1491(a)(1) .................................................................................................. 9

28 U.S.C. 1581 .............................................................................................................. *passim*

## REGULATIONS

50 C.F.R. part 300 ......................................................................................................... 2

50 C.F.R. § 300.105(a) .................................................................................................. 2

50 C.F.R. § 300.105(h) .................................................................................................. *passim*

## OTHER AUTHORITIES

33 U.S.T. § 3476 ........................................................................................................... 2

Black's Law Dictionary 468 (5th Ed. 1979) ................................................................ 5

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  THE HONORABLE TIMOTHY M. REIF, JUDGE**

| | |
|---|---|
| SOUTHERN CROSS SEAFOODS, LLC, )<br><br>Plaintiff, )<br><br>v. )<br><br>UNITED STATES and )<br>NATIONAL MARINE FISHERIES SERVICE, )<br><br>Defendants. ) | Court No. 22-00299 |

## DEFENDANTS' MOTION TO DISMISS

Pursuant to Rule 12(b)(1) of the Rules of the Court of International Trade, defendants, the United States and the National Marine Fisheries Service (NMFS), respectfully request that the Court dismiss the complaint filed by plaintiff Southern Cross Seafoods, LLC (Southern Cross). *See* Compl., ECF No. 6.  This Court lacks subject-matter jurisdiction over Southern Cross's claim because the denial of Southern Cross's preapproval application is not an embargo within this Court's jurisdiction under 28 U.S.C. § 1581(i) and, in any event, cases or controversies involving the Convention on the Conservation of Antarctic Marine Living Resources (CCAMLR or Convention) fall within the exclusive jurisdiction of the district courts.

## QUESTIONS PRESENTED

1.      Whether the contested action constitutes an embargo under 28 U.S.C. § 1581(i).

2.      Whether this Court possesses jurisdiction pursuant to 28 U.S.C. § 1581(i), given that 16 U.S.C. § 2440 gives the district courts exclusive jurisdiction over cases or controversies arising out of the CCAMLR or any regulations promulgated under the Antarctic Marine Living Resources Convention Act of 1984 (AMLRCA), 16 U.S.C. § 2431 *et seq.*

## BACKGROUND[1]

The United States is a party to the Convention for the Conservation of Antarctic Marine Living Resources (CCAMLR or Convention) and a member of the Convention's governing body—the Commission for the Conservation of Antarctic Marine Living Resources (Commission).  *See* 33 U.S.T. § 3476.  During its annual meetings, the Commission, acting in accordance with the Convention's conservation objective, formulates and adopts legally binding conservation measures (CM), including catch limits and other provisions, for fisheries within the Convention area.  *See id.* at Art. IX.

The AMLRCA, codified at 16 U.S.C. § 2431, *et seq*., provides the statutory authority for the United States to carry out its obligations under the Convention.  Pursuant to section 2436 of the AMLRCA, the Secretary of Commerce has authority to promulgate regulations as necessary and appropriate to implement the statute.  16 U.S.C. § 2436.  Acting under a delegation of that authority, NMFS has implemented Commission-adopted conservation measures that are binding on the United States through regulations, found at 50 C.F.R. part 300, subpart G.  Pursuant to regulation, "[a] NMFS-issued preapproval certificate is required to import each shipment of frozen [toothfish.]"  50 C.F.R. § 300.105(a).  The regulations further provide that NMFS will not issue a pre-approval certificate for any shipment of frozen toothfish "[d]etermined to have been harvested or transshipped in contravention of any CCAMLR Conservation Measure in force at the time of the harvest or transshipment."  50 C.F.R. § 300.105(h)(2).

This case concerns the fishery for *Dissostichus* species—commonly marketed as Chilean seabass or Patagonian toothfish—within Food and Agricultural Organization of the United

---

[1]  Unless specifically controverted, we assume the truth of plaintiff's factual allegations only for the purposes of this motion to dismiss.

Nations Statistical Subarea 48.3 (Subarea 48.3), which includes waters around South Georgia and South Sandwich Islands. *See* Compl. ¶¶ 1-3, Attachment A at 2. In 1986, the Commission adopted CM 31-01, which provides that, "for each fishing season after 1987/88, the Commission shall establish [catch] limitations or other measures, as necessary, [for Subarea 48.3]"). *Id*.

During its 2021 annual meeting, and notwithstanding CM 31-01, the Commission failed to adopt catch limits or other measures as necessary for Subarea 48.3, due to member state Russia blocking consensus. As a result, the Commission's long-standing CM 41-02, the conservation measure that had authorized the toothfish fishery in Subarea 48.3, lapsed. Compl. ¶ 4, Attachment A at 2. Fishing proceeded in the area, however, under licenses issued by the United Kingdom Government Overseas Territory of South Georgia and South Sandwich Islands. *Id.*, Attachment A at 2.

On August 8, 2022, Southern Cross submitted an application to NMFS for preapproval to import frozen toothfish that had been harvested from Subarea 48.3 in June and July of 2022. Compl. ¶ 1, Attachment A at 1. On September 15, 2022, NMFS denied preapproval, determining that the shipment of toothfish had been harvested in contravention of CM 31-01. *Id*., Attachment A at 2. NMFS explained that, in the absence of any measure affirmatively establishing a catch limit and other fishery-specific requirements for the current season in Subarea 48.3, fishing in that area was not authorized under CM 31-01. *Id*., Attachment A at 2-4. NMFS further explained that Russia's blocking of a consensus to adopt requirements for the 2021-2022 season did not mean that fishing could proceed in the absence of such a measure without contravening CM 31-01. *Id*., Attachment A at 4 (citing 50 C.F.R. § 300.105(h)(2)); *see also* 16 U.S.C. § 2435(3) (stating that it is unlawful to import "any Antarctic marine living resource (or part or product thereof) harvested in violation of a conservation measure in force

3

with respect to the United States pursuant to Article IX of the Convention or in violation of any regulation promulgated under this chapter").

On October 12, 2022, Southern Cross filed its complaint in this Court, requesting that the Court set aside the denial of the application for preapproval and issue a declaratory judgment that NMFS may not deny future applications for preapproval based on the absence of a CCAMLR conservation measure in force at the time of harvest.  Compl. ¶ 9.  Southern Cross asserted jurisdiction under 28 U.S.C. § 1581(i)(1)(C)-(D), and did not refer to the explicit jurisdictional requirement set forth in 16 U.S.C. § 2440.  *Id.* ¶¶ 10-12.

## ARGUMENT

**I.    Standard Of Review**

On a motion to dismiss for lack of jurisdiction, the factual allegations in the complaint are not controlling and only uncontroverted factual allegations are accepted as true.  *Shoshone Indian Tribe of the Wind River Reservation v. United States*, 672 F.3d 1021, 1030 (Fed. Cir. 2012).  In deciding such a motion, the Court may review evidence extrinsic to the pleadings.  *Id*. If a defendant challenges the Court's jurisdiction, the plaintiff cannot rely merely upon allegations in the complaint, but must bring forth relevant, competent proof to establish jurisdiction.  *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936).

The Court's determination of subject-matter jurisdiction is a threshold inquiry.  *Steel Co. v. Citizens For A Better Environment*, 523 U.S. 83, 94-95 (1998).  It is not defendant's burden to demonstrate jurisdiction.  Rather, the plaintiff bears the burden of establishing that jurisdiction is appropriate.  *See McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 189 (1936).  Whether jurisdiction exists is a question of law for the Court. *Inspired Dev. Grp., LLC v. Inspired Prod. Grp., LLC*, 938 F.3d 1355, 1360 (Fed. Cir. 2019) (citation omitted).

## II.   This Court Lacks Jurisdiction Over Southern Cross's Claims

The language of 16 U.S.C. § 2440, titled "Jurisdiction of courts," could not be more clear: "The district courts of the United States shall have *exclusive jurisdiction* over any case or controversy arising under the provisions of this chapter [governing the Convention on the Conservation of Antarctic Marine Living Resources] or of any regulation promulgated under this chapter." 16 U.S.C. § 2440 (emphasis added). But rather than adhering to this simple directive and filing suit at the appropriate district court, Southern Cross ignores the jurisdictional statute and instead alleges that 28 U.S.C. § 1581(i)(1)(C)-(D) provides the source of jurisdiction for this Court to hear its case, claiming that NMFS's denial of the preapproval application "amounts to an embargo on toothfish." Compl. ¶¶ 10-11. As the denial is not an embargo, and section 2440 plainly gives district courts exclusive jurisdiction, this Court lacks jurisdiction to entertain the complaint.

### A.   The Denial Of The Preapproval Application Does Not Constitute An Embargo

As an initial matter, even ignoring section 2440's exclusive jurisdiction provision, this Court does not have jurisdiction pursuant to section 1581(i)(1)(C) because NMFS's denial of the preapproval application, made pursuant to 50 C.F.R. § 300.105(h), is not an embargo, and does not "arise[] out of any law of the United States providing for" an embargo. 28 U.S.C. § 1581(i)(1)(C).

"An embargo is a '[g]overnment order prohibiting commercial trade with individuals or businesses of other nations.'" *K Mart Corp. v. Cartier, Inc.*, 485 U.S. 176, 184 (1988) (quoting Black's Law Dictionary 468 (5th Ed. 1979)). "It is a policy which prevents goods from entering a nation and which may be imposed on a product or on an individual country." *Id.* (cleaned up). In other words, as the Supreme Court noted, an embargo is "a governmentally imposed

quantitative restriction—of zero—on the importation of merchandise." *Id.* at 185.

Importantly:

> [N]ot every governmental importation prohibition is an embargo.  To hold
> otherwise would yield applications of the term 'embargo' that are
> unnatural, to say the least.  For example, the prohibitory nature of
> regulations providing that the *"importation* into the United States of milk
> and cream is *prohibited"* except by a permit holder, and that "Customs
> officers *shall not permit the importation* of any milk or cream that is not
> tagged in accordance with [applicable] regulations," would convert
> licensing and tagging requirements into embargoes on unlicensed or
> improperly tagged dairy products.  Similarly, a requirement that certain
> meat products be inspected prior to importation would magically become
> an embargo of uninspected (but not necessarily tainted) meat when
> Congress uses a formulation like, "meat . . . products *shall not be released
> from Customs* custody prior to inspection[.]

*Id.* (emphasis in original opinion).  In choosing to circumscribe a subclass of importation

prohibitions that come within this Court's jurisdiction, "Congress declined to grant this

Court jurisdiction to review challenges to 'conditions of importation' as distinct from

those involving embargoes." *Native Federation of Madre De Dios River and Tributaries*

*v. Bozovich Timber Products, Inc.*, 491 F. Supp. 2d 1174, 1181-82 (Ct. Int'l Trade)

(citing *K Mart Corp.*, 485 U.S. at 189)).

In *Native Federation*, this Court held that the Endangered Species Act (ESA),

which implements the Convention on International Trade in Endangered Species of Wild

Fauna and Flora (CITES), did not provide for an embargo on trade in certain species.  *Id.*

at 1176, 1182.  Rather, as the Court held, the ESA only mandated compliance with

CITES, which has certain permitting and documentation requirements for shipments of

protected species.  *Id.* at 1182.

Similarly, neither the CCAMLR, nor the AMLRCA, which provides the authority

necessary to implement the CCAMLR, *see* 16 U.S.C. § 2431(b), provide for an embargo.

Instead, the AMLRCA makes it unlawful to import Antarctic marine living resources "harvested in violation of a conservation measure in force . . . or in violation of any regulation promulgated under this chapter[.]" 16 U.S.C. § 2435(3). Nor does 50 C.F.R. § 300.105(h), the regulation cited by NMFS in denying the preapproval application, provide for an embargo on toothfish.

Here, NMFS made an individualized determination that the toothfish at issue had been harvested in contravention of a conservation measure, and thus could not be preapproved for importation. Both the statute and regulation clearly require compliance with conservation measures in order to import into the United States; to declare NMFS's determination an embargo on trade would yield an application that is "unnatural, to say the least." *K Mart Corp.*, 485 U.S. at 187. As the Court in *Native Federation* held, "[i]t is clear that Congress anticipated that lines would be drawn between laws that provide for the regulation of trade and those that provide for embargoes[,]" and that "laws found to provide for embargoes prohibit trade outright albeit with limited exceptions." *Id.*, 491 F. Supp. 2d at 1183-84. Because the Government did not end trade, but instead made a case-specific determination as to whether the toothfish was harvested in compliance with the AMLRCA and its implementing regulations, its actions do not prohibit trade outright. Instead, NMFS followed its regulations and determined the conditions in which importation is lawful; thus, the denial of Southern Cross's preapproval application does not amount to an embargo subject to this Court's jurisdiction under section 1581(i)(1)(C), even in the absence of the statutory grant of exclusive jurisdiction to the district courts under section 2440.

B.      **Exclusive Jurisdiction Over Actions Relating To The CCAMLR Is Vested In The District Courts**

Even if this Court determines that the contested action constitutes an embargo, it would still lack subject-matter jurisdiction because, as stated above, the plain language of 16 U.S.C. § 2440 clearly gives exclusive jurisdiction over cases arising under the AMLRCA and its regulations to the district courts.  Congress enacted section 2440 *after* 28 U.S.C. § 1581, and section 2440 specifically applies to cases and controversies arising under the AMLRCA and its implementing regulations; accordingly, exclusive jurisdiction can only lie in the district courts.  Southern Cross presumably will not argue that both the district courts and this Court can have *exclusive* jurisdiction; therefore, given its assertion in the complaint that the Court has jurisdiction pursuant to 28 U.S.C. § 1581(i)(1)(C), as well as its complete silence regarding 16 U.S.C § 2440, it must believe that a district court would not have jurisdiction to entertain its complaint—an untenable position, given the plain language of the statute.

1.      **Congress Was Presumptively Aware Of 28 U.S.C. § 1581(i) When Enacting 16 U.S.C. § 2440**

While true that section 1581(i)(1)(C) gives this Court exclusive jurisdiction of any civil action commenced against the Government that arises out of any law providing for an embargo, 16 U.S.C. § 2440, which was enacted four years *subsequently* to the passage of 28 U.S.C. § 1581, grants district courts exclusive jurisdiction over cases arising under the AMLRCA and its regulations.

It is axiomatic that Congress is presumed to be aware of existing law when enacting legislation.  *See, e.g., Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 169 (2014); *California Industrial Products, Inc. v. United States*, 436 F.3d 1341,

8

1354 (Fed. Cir. 2006).  Moreover, and importantly, Congress, in enacting section 2440, did not carve out an exception for matters that would otherwise fall under this Court's jurisdiction even though it indisputably knows how to do so.  *See, e.g.,* 28 U.S.C. § 1356 ("The district courts shall have original jurisdiction, exclusive of the courts of the States, of any seizure under any law of the United States on land or upon waters not within admiralty and maritime jurisdiction, *except matters within the jurisdiction of the Court of International Trade*") (emphasis added); 28 U.S.C. §§ 1491(a)(1), (c) (giving the Court of Federal Claims jurisdiction over claims against the United States "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States" but not over "*any civil action within the exclusive jurisdiction of the Court of International Trade*") (emphasis added); 28 U.S.C. § 1340 ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue, or revenue from imports or tonnage *except matters within the jurisdiction of the Court of International Trade*" (emphasis added)).  Congress's decision to *not* explicitly exempt matters within this Court's jurisdiction, combined with its employment of the term "exclusive jurisdiction" with regard to district courts and the presumption of awareness of the already-enacted 28 U.S.C. § 1581(i), makes clear that it intended to divest this Court of jurisdiction regarding matters concerning the CCAMLR and AMLRCA.

      **2.**      **Any Argument Concerning Repeal By Implication Does Not Support Southern Cross**

     To the extent Southern Cross argues that CCAMLR and AMLRCA repealed 28 U.S.C. § 1581 by implication and that such repeals are disfavored, that argument must fail.  Repeals by implication may be invoked when an enactment of a later statute is

9

irreconcilable with an earlier statute[2], and "the legislative intent to repeal must be manifest in the positive repugnancy between the provisions of the two statutes." *Inter-Coastal Xpress, Inc. v. United States*, 296 F.3d 1357, 1370 (Fed. Cir. 2002).  However, "a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment." *Morton v. Mancari*, 417 U.S. 535, 550-51 (1974) (cleaned up).

In addition to being later in time, 16 U.S.C. § 2440 is more specific than 28 U.S.C. 1581(i)(1)(C), as section 1581(i)(C)-(D) broadly applies to *any* laws of the United States.  Section 2440, on the other hand, applies only to cases arising out of the AMLRCA and relating to the CCAMLR.  Thus, section 2440 and its grant of exclusive jurisdiction to district courts may not be controlled or subsumed in any way by section 1581(i)(1)(C).  And, even if both statutes could be considered specific jurisdictional grants, neither of which is more general than the other, section 2440 must still prevail as the governing jurisdictional statute because the two specific grants of exclusive jurisdiction are irreconcilable with each other and section 2440 was enacted *after* section 1581(i)(1)(C).

### 3. *Orleans* Does Not Dictate The Outcome Of The Jurisdictional Inquiry

Southern Cross will likely invoke the Court of Appeals for the Federal Circuit's decision in *Orleans International, Inc. v. United States*, 334 F.3d 1375 (Fed. Cir. 2003),

---

[2] To avoid a finding of repeal by implication, "when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton*, 417 U.S. at 551.  Here, to the extent the Court determines that section 1581(i)(1)(C) is not repealed by implication with regard only to cases arising out of the AMLRCA, the only reasonable way to harmonize the two statutes would be to read 16 U.S.C. § 2440 as creating an *exception* to this Court's exclusive jurisdiction provision in section 1581(i)(1)(C), which leads to the same result—only a district court can have jurisdiction over Southern Cross's case.

in arguing that jurisdiction belongs in this Court rather than the district courts.  But

*Orleans* is inapposite and does not control the outcome of this Court's jurisdictional

inquiry.

In *Orleans*, the Federal Circuit held that this Court had jurisdiction, pursuant to 28

U.S.C. § 1581(i), to consider an action arising under the Beef Promotion and Research

Act of 1985 (Beef Act).[3]  *Orleans*, 334 F.3d at 1377.  Orleans filed suit in this Court,

arguing that the Beef Act's assessments on the importation of beef was unconstitutional,

and that the Court had jurisdiction under section 1581(i).  *Id*.  This Court dismissed the

action, holding that 7 U.S.C. § 2908(b) vested the district courts with jurisdiction "to

enforce, and to prevent and restrain a person from violating, an order or regulation made

or issued" pursuant to the Beef Act.  *Id*.

The Federal Circuit reversed; in doing so, it cited its earlier decision in *Vivitar

Corp. v. United States*, 761 F.2d 1552 (Fed. Cir. 1985), in which it had stated that "it is

faulty analysis to look first to the jurisdiction of the district courts to determine whether

the [Court of International Trade] has jurisdiction . . . The focus must be solely on

whether the claim falls within the language and intent of the jurisdiction grant to the

[Court of International Trade]." *Id.* at 1378 (*quoting Vivitar*, 761 F.2d at 1559-60).  It

also held that, while the Beef Act conferred jurisdiction to the district courts for a certain

class of case—government-brought enforcement actions—"Congress did not give the

district courts jurisdiction over *every type* of action arising out of the Beef Act." *Id.* at

1379-80.  The Federal Circuit concluded that section 2908(b) was only a specific and

---

[3]  The Beef Act "mandates the collection of assessments on both domestic sales of cattle and imports of cattle, beef, and beef products." *Orleans*, 334 F.3d at 1377.

limited grant of jurisdiction to the district courts and inapplicable to the action under consideration.  *Id*. at 1380.

The situation considered in *Orleans* is readily distinguishable from the one here. While the Federal Circuit concluded in *Orleans* that Congress did not intend to give the district courts exclusive jurisdiction over all Beef Act actions, here, Congress clearly intended to give the district courts exclusive jurisdiction over all actions involving AMLRCA and its implementing regulations.  It did not carve out a specific type of action, like the government-brought enforcement action in *Orleans*; rather, it granted the district courts "*exclusive* jurisdiction over *any* case or controversy arising under the provisions of this chapter or of any regulation promulgated under this chapter."  16 U.S.C. § 2440 (emphasis added).  The Congressional intent the Federal Circuit found lacking in *Orleans* is manifest in section 2440.

Moreover, the directive in *Orleans* to look solely at this Court's jurisdiction cannot apply here, where the competing jurisdictional statute also has an exclusivity provision.  The Beef Act's jurisdictional provision only states that "[t]he district courts of the United States are vested with jurisdiction specifically to enforce, and to prevent and restrain a person from violating, an order or regulation made or issued under this chapter."  7 U.S.C. §2908(b).  16 U.S.C. § 2440, on the other hand, confers "exclusive jurisdiction" on the district courts.  Thus, even assuming the contested action is an "embargo" for purposes of section 1581(i), the Court cannot look only at the exclusivity provision in that statute at the expense of ignoring the exclusivity provision in the more recent, more specific section 2440.

## <u>CONCLUSION</u>

For these reasons, we respectfully request that the Court dismiss the complaint for lack of jurisdiction.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

/s/ L. Misha Preheim
L. MISHA PREHEIM
Assistant Director

s/Sosun Bae
SOSUN BAE
Senior Trial Counsel
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington D.C. 20044
Tel: (202) 305-7568
Fax: (202) 514-8640
Email: Sosun.Bae@usdoj.gov

Dated: December 19, 2022          Attorneys for Defendants

13

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rule 2(b) of the Court's Standard Chambers Procedures, defendants' counsel certifies that this motion complies with the Court's type-volume limitation rules.  According to the word count calculated by the word processing system with which the brief was prepared, this brief contains a total of 3,503 words.

<u>s/ Sosun Bae</u>

December 19, 2022

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of December, 2022, I electronically filed a copy of the foregoing using the CM/ECF system, which sent a notification of such filing to counsel of record.

/s/ Sosun Bae
Sosun Bae

## UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE:  THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| SOUTHERN CROSS SEAFOODS, LLC,  ) | |
| ) | |
| Plaintiff,  ) | |
| ) | |
| v.  ) | Court No. 22-00299 |
| ) | |
| UNITED STATES and  ) | |
| NATIONAL MARINE FISHERIES SERVICE,  ) | |
| ) | |
| Defendants.  ) | |
| ) | |

## <u>ORDER</u>

On consideration of defendants' motion to dismiss, plaintiff's response, and all other papers, it is

hereby;

      ORDERED that the motion is granted and, it is further;

      ORDERED that the complaint is dismissed with prejudice.

IT IS SO ORDERED.


Dated: _____                  _____

                                                   JUDGE