## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| SOUTHERN CROSS SEAFOODS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Court No. 22-00299 |
| ) | |
| UNITED STATES and ) | |
| NATIONAL MARINE FISHERIES SERVICE, ) | |
| ) | |
| Defendants. ) | |

## **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

L. MISHA PREHEIM
Assistant Director

SOSUN BAE
Senior Trial Counsel
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington D.C. 20044
Tel: (202) 305-7568
Fax: (202) 514-8640
Email: Sosun.Bae@usdoj.gov

Dated: January 27, 2023          Attorneys for Defendant

## TABLE OF CONTENTS

ARGUMENT ........................................................................................................... 1

I.      NMFS's Denial Is Not An Embargo Or A Quantitative Restriction ...................... 1

II.     Southern Cross Has Not Demonstrated That Exclusive Jurisdiction Should Lie With This Court Rather Than The District Courts ................................................ 7

        A.     A Strict Application Of *Orleans* and *Vivitar* Makes Little Sense Here ..... 8

        B.     Southern Cross's Repeal By Implication Arguments Do Not Succeed .... 11

        C.     16 U.S.C. § 2440 Is More Specific Than 28 U.S.C. § 1581(i) ............... 13

CONCLUSION ..................................................................................................... 16

## TABLE OF AUTHORITIES

**CASES**                                                                                   **PAGE(S)**

*Best Foods, Inc. v. United States*,
  218 F. Supp. 576 (Cust. Ct. 1963) ........................................................................... 7

*Bethlehem Steel Corp. v. United States*,
  316 F. Supp. 2d 1309 (Ct. Int'l Trade 2004) .......................................................... 7

*Earth Island Inst. v. Christopher*,
  6 F.3d 648 (9th Cir. 1993) .................................................................................... 2, 3

*Hanlin v. United States*,
  214 F.3d 1319 (Fed. Cir. 2000) ........................................................................ 11, 12

*Harris v. United States*,
  841 F.2d 1097 (Fed. Cir. 1988) .............................................................................. 13

*Humane Soc'y of the United States v. Brown*,
  901 F. Supp. 338 (Ct. Int'l Trade 1995) .................................................................. 2

*In re Colonial Realty Co.*,
  890 F.3d 125 (2nd Cir. 1992) ............................................................................ 12, 13

*Int'l Labor Rights Fund v. Bush*,
  357 F. Supp. 2d. 204 (D.D.C. 2004) .................................................................... 2, 3

*K Mart Corp. v. Cartier, Inc.*,
  485 U.S. 176 (1988) ...................................................................................... passim

*Maple Leaf Fish Co. v. United States*,
  762 F.2d 86 (Fed. Cir. 1985) ................................................................................... 6

*Mississippi ex rel. Hood v. AU Optronics Corp.*,
  571 U.S. 161 (2014) ............................................................................................... 12

*Native Federation of Madre De Dios River and Tributaries v. Bozovich Timber Pods., Inc.*,
  491 F. Supp. 2d 1174 (Ct. Int'l Trade 2007) ....................................................... 5, 6

*Neptune Mut. Ass'n, Ltd. of Bermuda v. United States*,
  862 F.2d 1546 (Fed. Cir. 1988) .............................................................................. 13

*Orleans Int'l, Inc. v. United States*,
  334 F.3d 1375 (Fed. Cir. 2003) ............................................................................ 8, 9

*Salmon Spawning & Recovery Alliance v. United States,*
  626 F. Supp. 2d 1277 (Ct. Int'l Trade 2009).................................................................3, 5, 15

*United States v. Mitchell,*
  39 F.3d 465 (4th Cir. 1994).................................................................................................13

*Vivitar Corp. v. United States,*
  761 F.2d 1552 (Fed. Cir. 1985)...................................................................................8, 9, 10

## STATUTES

7 U.S.C. § 2908(b)....................................................................................................................9
16 U.S.C. § 1540....................................................................................................................15
16 U.S.C. § 1826a (1995).........................................................................................................2
16 U.S.C. § 2431...........................................................................................................passim
16 U.S.C. § 2435...........................................................................................................passim
16 U.S.C. § 2440...........................................................................................................passim
19 U.S.C. § 1307......................................................................................................................3
28 U.S.C. § 1331....................................................................................................................14
28 U.S.C. § 1338....................................................................................................................10
28 U.S.C. § 1356....................................................................................................................10
28 U.S.C. § 1390....................................................................................................................10
28 U.S.C. § 1491..............................................................................................................10, 12
28 U.S.C. § 1581...........................................................................................................passim
38 U.S.C. § 511(a)...........................................................................................................11, 12
Pub. L. No. 96-417, 94 Stat. 1742-43 ...................................................................................11

## REGULATIONS

19 C.F.R. § 12.60 (1987)......................................................................................................2, 3
50 C.F.R. § 23.12(a)(1)(ii)........................................................................................................5
50 C.F.R. § 300.105.......................................................................................................passim

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| SOUTHERN CROSS SEAFOODS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Court No. 22-00299 |
| | ) |
| UNITED STATES and | ) |
| NATIONAL MARINE FISHERIES SERVICE, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

Pursuant to Rule 12(b)(1) of the Rules of the Court of International Trade, defendants, the United States and the National Marine Fisheries Service (NMFS), respectfully submit this reply in support of their motion to dismiss.  In its response, plaintiff Southern Cross Seafoods, LLC (Southern Cross), fails to rebut our showing that the NMFS's denial of Southern Cross's preapproval application does not constitute an embargo, or our showing that, even if the Court were to consider the action at issue an embargo (or a quantitative restriction), exclusive jurisdiction over Southern Cross's claim lies in the appropriate district court.  Accordingly, the Court should grant our motion to dismiss and enter judgment in favor of defendants.

**ARGUMENT**

**I.     NMFS's Denial Is Not An Embargo Or A Quantitative Restriction**

As we discussed in our opening brief, the Supreme Court has described an embargo as a "governmentally imposed quantitative restriction—of zero—on the importation of merchandise." *K Mart Corp. v. Cartier, Inc.*, 485 U.S. 176, 185 (1988).  But, of course, "not every governmental importation prohibition is an embargo." *Id.* at 187.  And, while the examples of

non-embargo importation prohibitions catalogued in *K Mart Corp.* focus on permits, licensing, and inspection, this does not detract from the soundness of declining to name NMFS's action, or the regulation and statute underpinning it, an embargo.  As *K Mart Corp.* instructs, the application of regulations that are "prohibitory in nature" does not convert such regulations into embargoes.  *Id*.  And just as the preapproval certificate that was denied in this case could only be issued pursuant to certain requirements, the permits and licenses described in *K Mart Corp.* would have required compliance with certain substantive conditions or requirements.

Southern Cross emphasizes that 19 C.F.R. § 12.60 (1987), which, *inter alia*, prohibited the importation of fur seal and otter skins if the skins were taken "contrary to the provisions of section 2 of the act of February 26, 1944 (58 Stat. 100-104)[,]" was cited by *K Mart Corp.* as an example of an embargo.  Southern Cross. Opp. at 12-13.  While *K Mart Corp.* did cite 19 C.F.R. § 12.60, Southern Cross misses the mark by comparing it, along with the other sources it cites,[1] to 16 U.S.C. § 2435 and the denial of the preapproval application by NMFS.  *See id.* at 13-14.

The sources Southern Cross cites all appear to expressly confer blanket authority to prohibit import of products.[2]  *Id*.  For instance, in *Humane Soc'y*, the statute at issue, 16 U.S.C. § 1826a (1995), stated that the President would direct the Department of the Treasury to prohibit importation of fishing-related products from certain countries engaging in large-scale driftnet fishing.  *Humane Soc'y*, 901 F. Supp. 338 at 334.  In *Earth Island*, the relevant statute provided

---

[1]  The cited cases are *Humane Soc'y of the United States v. Brown*, 901 F. Supp. 338, 344, 346 (Ct. Int'l Trade 1995); *Earth Island Inst. v. Christopher*, 6 F.3d 648, 649 n.1, 651-52 (9th Cir. 1993); *Int'l Labor Rights Fund v. Bush*, 357 F. Supp. 2d. 204, 205, 208-10 (D.D.C. 2004).

[2]  And even so, as stated above, not every governmental importation prohibition is an embargo.  *See K Mart Corp.*, 485 U.S. at 187.

that the importation of shrimp products harvested with commercial fishing technology which may adversely affect certain species of sea turtles "shall be prohibited[.]" *Earth Island*, 6 F.3d at 649 n.1.  And in *Int'l Labor Rights*, the Tariff Act of 1930, 19 U.S.C. § 1307, prohibited importation of all goods produced or manufactured by forced labor.  *Int'l Labor Rights*, 357 F. Supp. 2d at 205.

Here, however, NMFS specifically denied issuance of one preapproval certificate because the proposed import was harvested in contravention of a conservation measure adopted by consensus under the Convention on the Conservation of Antarctic Marine Living Resources (CCAMLR).  APPX83-86.[3]  This single decision is not an embargo or quantitative restriction on the trade of toothfish pursuant to the standard set forth in *K Mart Corp.*, and, notably, Southern Cross has not cited any authority to support its argument that an agency's application of a condition of trade in one particular instance constitutes an embargo.  This absence of support is not surprising, given that *K Mart Corp.* makes evident that a condition of trade is not an embargo even if a case-specific application of that condition might lead to a situation where importation of a product is prevented.

The issue underlying NMFS's decision (made pursuant to 50 C.F.R. §§ 300.105(d), (h)(2)) was whether this shipment of toothfish was harvested in contravention of a conservation measure, as is discussed in 16 U.S.C. § 2435 and 50 C.F.R. §§ 300.105(d), (h)(2).  APPX85-86, Southern Cross Opp. at 18.  But section 2435, unlike the sources cited by Southern Cross, does not contain a prohibition on importation.  *See* 16 U.S.C. § 2435; *see also Salmon Spawning & Recovery Alliance v. United States*, 626 F. Supp. 2d 1277, 1282-83 (Ct. Int'l Trade 2009)

---

[3]  "APPX_" refers to pages of the administrative record filed on December 16, 2022.  *See* ECF No. 24.

(finding no embargo with regard to a statute where "[a]bsent from the text . . . are any terms that serve as a limitation on the importation of certain merchandise, such as a 'restriction,' a 'prohibition,' a 'ban,' a 'bar', or an 'embargo.'"). Nor does 50 C.F.R. § 300.105, which sets forth the steps and requirements for preapproval for the importation of toothfish, and provides that "NMFS will not issue a preapproval certificate for any shipment of [toothfish] . . . [d]etermined to have been harvested or transshipped in contravention of any CCAMLR Conservation Measure in force at the time of harvest or transshipment." 50 C.F.R § 300.105(h)(2).

The Court should reject Southern Cross's attempt to bootstrap 16 U.S.C. § 2435, which does not confer embargo authority, onto NMFS's decision about Southern Cross's preapproval application. NMFS issued a decision in response to one specific preapproval application, based on a specific regulation *allowing* the agency to issue a preapproval certificate for importation of toothfish if the toothfish was not harvested in contravention of a conservation measure, and providing that the agency would not issue such preapproval for toothfish determined to have been in contravention of such a measure. APPX83-86 (citing C.F.R. §§ 300.105(d), (h)(2)). This is not an embargo or quantitative restriction, and Southern Cross's allegation that NMFS will deny any future preapproval applications in identical circumstances does not transform the action into an embargo for the purposes of the Court's jurisdiction.

Jurisdiction also does not exist pursuant to 28 U.S.C. § 1581(i)(1)(D), despite Southern Cross's claim to the contrary. Southern Cross Opp. at 8. As this Court has held, "[t]hat provision applies where the law pursuant to which a claim is brought involves the administration

and enforcement of, among other determinations, an embargo or other quantitative restriction."[4] *Salmon Spawning*, 626 F. Supp. 2d at 1283.  And, "where a law fails to invoke the Court's jurisdiction under [section 1581(i)(1)(C)] because it is not an embargo or other quantitative restriction, . . . no jurisdiction remains for the Court under [section 1581(i)(1)(D)]."  *Id*.  Because none of the NMFS actions under 16 U.S.C. § 2435, or 50 C.F.R. § 300.105 constitute an embargo, this Court cannot have jurisdiction pursuant to section 1581(i)(1)(D).

Southern Cross tries to distinguish this Court's decision in *Native Federation of Madre De Dios River and Tributaries v. Bozovich Timber Pods., Inc.*, 491 F. Supp. 2d 1174, 1181-82 (Ct. Int'l Trade 2007), by claiming that the regulations at issue in that case "merely regulated trade" whereas NMFS is "barring trade in toothfish from Subarea 48.3 entirely."  Southern Cross. Opp. at 15.  However, as explained above, 50 C.F.R. § 300.105 "merely regulates trade" and sets conditions for importation, just as the requirements in *Native Federation* did.  *See K Mart Corp.*, 485 U.S. at 1181-82.  Southern Cross ignores the significance of the importation conditions in *Native Federation*, reducing them to simple permitting and documentation requirements.  Southern Cross Opp. at 15-16.  But the grant of the permit at issue in *Native Federation* was conditioned on determinations that the export "will not be detrimental to the survival of th[e] species" and "the specimen was not obtained in contravention of the laws of that State for the protection of fauna and flora[.]"  *Native Federation*, 491 F. Supp. 2d at 1178; *see also* 50 C.F.R. §§ 23.12(a)(1)(ii) (2001) (requiring valid export permit).  These conditions are decidedly similar to the condition that NMFS may issue a preapproval certificate if it determines

---

[4] *Salmon Spawning* dealt with an earlier version of the statute, which set the relevant provision at 28 U.S.C. § 1581(i)(4), rather than its current location of section 1581(i)(1)(D). However, the language is substantively identical.  *Compare* 28 U.S.C. § 1581(i)(4) (2009) *with* 28 U.S.C. § 1581(i)(1)(D).

"that the resources were not harvested in violation of any CCAMLR conservation measure[.]"
50 C.F.R. § 300.105(d).  As the Court in *Native Federation* stated, the laws that the Court has
"found to provide for embargoes prohibit trade outright albeit with limited exceptions." *Native
Federation*, 491 F. Supp. 2d at 1184.  The regulation and statute at issue in the present case do
not prohibit trade outright, with or without limited exceptions; rather, like the laws in *Native
Federation*, they regulate trade and establish conditions on importation; thus, neither they, nor
NMFS's decision to deny a preapproval certificate, constitute an embargo.

      With regard to Southern Cross's claim that "NMFS is barring trade in toothfish from
Subarea 48.3 entirely[,]" Southern Cross. Opp. at 15, as explained above, this statement is simply
not accurate, as NMFS issued a single decision denying a preapproval application; it did not
issue a blanket ban on toothfish importation (which NMFS does not even have the authority to
do, though it clearly has authority to determine whether the conditions for issuing a preapproval
certificate have been met).  This Court's decision in *Native Federation* makes clear that NMFS's
preapproval decision is not an embargo.

      Finally, Southern Cross contends that, even if the preapproval denial is not an embargo,
"it is certainly a 'quantitative restriction on the importation of merchandise.'"  Southern Cross.
Opp. at 8.  But this argument makes little sense in light of the proclamation in *K Mart Corp.* that
an embargo is a quantitative restriction of zero.  *K Mart Corp.*, 485 U.S. at 185.  Given this
statement, it is only reasonable to assume that analyzing whether an importation condition
constitutes a quantitative restriction should follow along similar lines to determining whether it
constitutes an embargo.  And, as demonstrated above and in our opening brief, NMFS's decision
is not an embargo.  Furthermore, a quantitative restriction can best be described as a quota, or a
limit on the quantity of a product that may be imported or exported.  *See, e.g.*, *Maple Leaf Fish*

*Co. v. United States*, 762 F.2d 86, 88 (Fed. Cir. 1985) (describing quantitative restrictions as import quotas); *Best Foods, Inc. v. United States*, 218 F. Supp. 576, 577 (Cust. Ct. 1963) (referring to quantitative restrictions as quotas); *Bethlehem Steel Corp. v. United States*, 316 F. Supp. 2d 1309, 1314 n.8 (Ct. Int'l Trade 2004) (defining a quantitative restriction agreement as an agreement establishing a quota). There is clearly no quota at issue here.[5]

Fundamentally, this matter does not concern an embargo or quantitative limit on the importation of toothfish. Rather, Southern Cross's own complaint demonstrates that the underlying issue is whether NMFS reasonably determined that the toothfish imports were harvested in contravention of a conservation measure in force, specifically CCAMLR Conservation Measure (CM) CM 31-01. Southern Cross Compl. ¶¶ 53, 57; ECF No. 6. Because no embargo or quantitative restriction exists, the Court can dismiss this action without even considering whether exclusive jurisdiction belongs with the district courts or this Court.

## II.  Southern Cross Has Not Demonstrated That Exclusive Jurisdiction Should Lie With This Court Rather Than The District Courts

If this Court determines that an embargo exists, Southern Cross's complaint must still be dismissed because jurisdiction over cases arising under the Antarctic Marine Living Resources Convention Act (AMLRCA), 16 U.S.C. § 2431 *et seq.*, and its regulations is vested exclusively with the district courts. Southern Cross does not dispute that this case arises out of the AMLRCA and 50 C.F.R. § 300.105; thus, the only issue is whether the district courts or this Court have exclusive jurisdiction over the matter. We established in our opening brief that exclusive jurisdiction lies in the district court, and Southern Cross fails demonstrate otherwise.

Southern Cross concedes that district courts have exclusive jurisdiction over cases and

---

[5] Indeed, CCAMLR did not even adopt a catch limit for the 2021-22 fishing season with regard to Subarea 48.3. APPX85.

controversies involving disputes regarding whether harvesting activities were in violation of a CCAMLR measure. Southern Cross Opp. 18 ("Pursuant to 16 U.S.C. § 2435, there are numerous unlawful activities, such as engaging in harvesting in violation of a conservation measure . . . Under section 2440, the district courts would have exclusive jurisdiction over any case or controversy arising out of [that issue]."). But it then disclaims that a district court should have jurisdiction over its claims, even though the question of whether NMFS correctly determined that toothfish were harvested in contravention of a conservation measure is the central question in this case. *See* Compl. ¶¶ 53 ("In denying Southern Cross's application for preapproval, Defendants did not set forth any evidence demonstrating that the toothfish imports were harvested in violation of a conservation measure in force, including CM 31-01.") (cleaned up), 57 ("Defendants failed to offer any evidence to demonstrate that the harvesting or importation of Southern Cross's toothfish violated any CCAMLR conservation measure in force with respect to the United States."). Southern Cross's position in its brief cannot be squared with its allegations, and this inconsistency undermines Southern Cross's efforts to demonstrate that exclusive jurisdiction exists in this Court.

## A. A Strict Application Of *Orleans* and *Vivitar* Makes Little Sense Here

In our opening brief, we acknowledged the Court of Appeals for the Federal Circuit's decisions in *Orleans Int'l, Inc. v. United States*, 334 F.3d 1375 (Fed. Cir. 2003) and *Vivitar Corp. v. United States*, 761 F.2d 1552 (Fed. Cir. 1985), but demonstrated why those cases do not control here. Govt. MTD at 10-11, ECF No. 25. In those decisions, the Federal Circuit stated that "it is faulty analysis to look first to the jurisdiction of the district courts to determine whether the [Court of International Trade] has jurisdiction . . . The focus must be solely on whether the claim falls within the language and intent of the jurisdiction grant to the [Court of International

Trade].” *Orleans*, 334 F.3d at 1378 (*quoting Vivitar*, 761 F.2d at 1559-60).

Southern Cross urges the Court to blindly follow the approach set forth in *Orleans* and *Vivitar* without regard for the language of the competing jurisdictional statute—here, 16 U.S.C. § 2440.  But the jurisdictional statutes at issue in *Orleans* and *Vivitar* did not include explicit exclusivity language; section 2440, on the other hand, gives district courts “***exclusive*** jurisdiction over any case or controversy arising under” the AMLRCA and its implementing regulations.  16 U.S.C. § 2440.  Southern Cross does not contest that the competing jurisdictional statutes in *Orleans* and *Vivitar* had no exclusivity provisions, but it attempts to downplay the import of the term “exclusive” in section 2440 by stating that repeals by implication are disfavored and citing the statements in *Orleans* and *Vivitar* that the focus should be solely on this Court’s jurisdictional statute.  But neither Southern Cross nor the decisions in *Orleans* and *Vivitar* account for a situation where ***both*** jurisdictional statutes claim exclusivity.  If both this Court and the district courts deemed it proper to completely ignore the explicit exclusivity provisions present in the other’s jurisdictional statute, and instead focus solely on their own jurisdiction, the result would be absurd: both courts could claim exclusive jurisdiction over the exact same issue. This cannot be what the Federal Circuit intended.  Rather, the only reasonable conclusion is that those decisions do not address a situation where the competing jurisdictional statute also contain an express exclusivity provision.  The highly distinguishable circumstance at hand here obviates any concern with contravening the precedent set forth in *Orleans* and *Vivitar*.  Moreover, Southern Cross did not even engage with our argument that *Orleans* is distinguishable because the Federal Circuit found Congressional intent to confer exclusivity on the district courts lacking with regard to 7 U.S.C. § 2908(b) (the jurisdictional statute at issue in *Orleans*).  *See* Govt. MTD at 12.

In addition, Southern Cross mischaracterizes our emphasis on the word "any" in the phrase "any case or controversy." Southern Cross Opp. at 10. Southern Cross compares the use of the word "any" with the word "any" in 28 U.S.C. § 1338(a), which was the competing jurisdictional statute at issue in *Vivitar* and which states that the district court has jurisdiction over "any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights, and trademarks." *Id*. But we discussed the term "any" in conjunction with the term "exclusive" to emphasize the exclusivity of the district court's jurisdiction over *any*, or all, cases arising out of the AMLRCA and its implementing regulations, not merely *some* AMLRCA-related cases or all AMRLCA-related cases *except* for those involving purported embargoes or quantitative restrictions.[6] As already discussed, the jurisdictional statute in *Vivitar* does not include an exclusivity provision and so the word "any" does not carry the same import.

Southern Cross also notes that, in *Vivitar*, the Federal Circuit determined that section 1581(i) conferred jurisdiction on this Court, even though 28 U.S.C. § 1338, the statute at issue in that case, did not have an express carveout. But we have not claimed that every statute without a carveout explicitly reserving jurisdiction for this Court implicitly deprives the Court of jurisdiction. Rather, we cited the carveouts to buttress our arguments that 16 U.S.C. § 2440 was enacted *after* 28 U.S.C. § 1581, expressly gives the district courts exclusive jurisdiction, *and* fails to exempt matters that would otherwise be within this Court's jurisdiction. Southern Cross cannot escape the practical effect of these points.

Relatedly, Southern Cross claims that *Vivitar* dispenses with our argument that Congress has, in other jurisdictional statutes, explicitly exempted matters within this Court's jurisdiction; it states that the three statutes we cited—28 U.S.C. §§ 1356, 1491, and 1390—predated the

---

[6] Again, the contested action is not an embargo or quantitative restriction.

Customs Courts Act of 1980.  Southern Cross Opp. at 10.  It is unclear what import Southern

Cross is assigning to the fact that the statutes were enacted prior to the creation of this Court

through the Customs Courts Act, particularly since each statute updated its language to exclude

matters within the jurisdiction of the Court of International Trade once this Court was

established.  *See* Pub. L. No. 96-417, 94 Stat. 1742-43 (1980).  Regardless of when the statutes

were enacted or amended, they still each specifically exempt certain matters within the

jurisdiction of this Court from district court jurisdiction—a situation not present with regard to

16 U.S.C. § 2440.

### B.        Southern Cross's Repeal By Implication Arguments Do Not Succeed

While we agree that repeals by implication are not generally favored, this does not render

them a nonentity.  Here, the language of both statutes, specifically the competing exclusivity

provisions, render them irreconcilable without reading an unstated qualifier into one or the other.

Accordingly, section 2440, being later in time and more specific, should take precedence.[7]

Southern Cross relies on *Hanlin v. United States*, 214 F.3d 1319 (Fed. Cir. 2000), in

arguing against a very limited repeal by implication.  Southern Cross Opp. at 17.  But the

situation in *Hanlin* is not analogous to the present one.  To start, the competing jurisdictional

provision in *Hanlin*, 38 U.S.C. § 511(a), does not contain as explicit an exclusivity provision as

16 U.S.C. § 2440; rather, it states that [t]he Secretary [of Veterans Affairs (VA)] shall decide all

questions of law and fact necessary to a decision by the Secretary under a law that affects the

---

[7]  Southern Cross alleges that, for section 2440 to prevail, "Congress must have somehow repealed section 1581(i)."  Southern Cross Opp. at 16.  To be quite clear, we are not suggesting, nor have we ever suggested, that section 2440 repeals section 1581(i) in its entirety.  Rather, any repeal by implication would only concern the extremely narrow area of embargoes arising from the AMRLCA and its regulations, to the extent the AMRLCA can even be construed as calling for embargoes.

provision of benefits by the Secretary to veterans or the dependents or survivors of veterans."[8] In addition, the Federal Circuit, in ruling against repeal by implication, found that section 511(a) could coexist with 28 U.S.C. § 1491(a)(1) because the former statute requires only that, *once* VA has been asked to make a decision in a particular case, VA has the duty "to decide all questions of fact and law necessary to a decision in that case." *Hanlin*, 214 F.3d at 1321. The claim at issue in *Hanlin*, however, did not require Mr. Hanlin to pursue a claim or remedy through VA, thus not requiring a "decision" by VA.

Here, on the other hand, the two statutes can only coexist if an unstated qualifier is inserted into one of the statutes exempting certain matters from the other court's review. Southern Cross acknowledges this, arguing that, under 16 U.S.C. § 2440, district courts would have exclusive jurisdiction arising out of the AMLRCA and its regulations *except if the case involved an embargo or quantitative restriction*. Southern Cross Opp. at 18. The obvious problem is that no such qualifier exists in section 2440. And if the Court were to read in such an unstated qualifier, it is more reasonable to construe section 2440 as creating an exception to the jurisdictional provision in 28 U.S.C. § 1581(i) rather than the other way around. This is especially true given that section 2440 was enacted later in time and with Congress's presumptive knowledge of the existence of section 1581(i). *See, e.g., Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 169 (2014).[9]

---

[8] To be sure, we are not contending that the VA *lacks* exclusive jurisdiction over the matters stated 38 U.S.C. § 511(a); we simply note that 16 U.S.C. § 2440 has the more explicit exclusivity provision.

[9] Southern Cross claims that the presumption of knowledge of existing legislation favors its position rather than ours, but the cases it cites involve distinguishable statutes and situations where the courts did not find the two statutes irreconcilable. For instance, in *In re Colonial Realty Co.*, 890 F.3d 125, 132-33 (2nd Cir. 1992), the court based its decision largely on the fact that Congress had, in other parts of the legislation at issue, carefully considered the coordination

Southern Cross also attempts to bolster its repeal-by-implication argument by arguing that Congress, knowing of the already-existing statute, would have explicitly "designated the provisions whose applications it wishes to suspend" if it wanted to do so.  Southern Cross. Opp. at 18 (quoting *United States v. Mitchell*, 39 F.3d 465, 472 (4th Cir. 1994)).  But *Mitchell*, aside from being non-binding, does not stand for the proposition that, when a later-in-time statute is silent as to relevant provisions in the earlier statute, one should read in an unstated qualifier to that later-in-time statute.  Rather, *Mitchell* goes on to state that a court will still find the intent to repeal by implication when the statutes are in irreconcilable conflict or the later act covers the entire subject of the earlier one.  *Id.*; *see also Harris v. United States*, 841 F.2d 1097, 1100 (Fed. Cir. 1988) ("the doctrine that repeals by implication are not favored cannot be allowed to overcome other and plainer indications of intent."); *Neptune Mut. Ass'n, Ltd. of Bermuda v. United States*, 862 F.2d 1546, 1551 (Fed. Cir. 1988) (it is a "well-settled" category of repeal by implication that, "where provisions in two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one").  And, as discussed above and in our opening brief, the two statutes, by virtue of their competing explicit exclusivity provisions, are not reconcilable; accordingly, the later-enacted section 2440 takes precedence for purposes of jurisdictional exclusivity.

C.     **16 U.S.C. § 2440 Is More Specific Than 28 U.S.C. § 1581(i)**

While Southern Cross argues that 28 U.S.C. § 1581(i) is more specific than 16 U.S.C. § 2440, its reasoning is flimsy.  *Id.* at 19-21.  Southern Cross seems to understand section 1581(i) as being more specific largely because Congress had intended to create a court utilizing the

---

between the competing statutory frameworks, and therefore the court could not conclude that Congress, by staying silent about one particular aspect, had implicitly repealed part of the earlier statute.  *Id.* at 133.

specialized expertise of predecessor courts and "delineating precisely the particular customs-related matters" over which this Court would have jurisdiction. *Id*. at 20 (quoting *K Mart Corp*., 485 U.S. at 189).  But the Court having specialized expertise over a wide array of trade-related areas and its jurisdiction being explicitly delineated does not necessarily render its jurisdictional statute especially specific, unless compared to a definitively broad statute such as 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

Section 2440, while granting the district courts exclusive jurisdiction "over any case or controversy arising under the provisions of this chapter or of any regulation promulgated under this chapter," relates solely to the AMLRCA, which covers the narrow subject areas of protecting and conserving Antarctic marine living resources, maintaining international cooperation in Antarctica, and maintaining a fleet of icebreaking vessels in Antarctica.  *See* 16 U.S.C. § 2431(a).  Numerous cases or controversies that could arise specifically related to these very particular and precise subject areas constitute a much narrower universe than the broad array of cases this Court sees relating to ***any laws*** providing for embargoes, tariffs, duties, and the other subjects of section 1581(i), especially when the topics subjected to section 1581(i) are not cabined by geography, product category, agency, or any similar type of modifier.

Southern Cross misdirects by stating that section 1581(i) is more specific than section 2440 because "this Court would possess subject-matter jurisdiction over one-and-only one cause of action:  a case where a party challenged the imposition by the Government of an embargo or other quantitative restriction on imports, as Southern Cross is doing in this case."  Southern Cross Opp. at 21.  But the comparison Southern Cross offers is not apples-to-apples, as it compares the single cause of action at issue in this exact case to all cases arising under the

14

AMLRCA.  And, even taking the inapt comparison aside, the narrow subject areas covered by

the AMLRCA are more specific than any laws of the United States providing for embargoes or

quantitative restrictions.

Southern Cross states that this Court has determined section 1581(i) to be more specific

than 16 U.S.C. §§ 1540(c) and (g), which address jurisdiction for the Endangered Species Act.

*See* Southern Cross Opp. at 20 (citing *Salmon Spawning*, 626 F. Supp. 2d at 1284-85).  But

Southern Cross's reliance on *Salmon Spawning* fails for multiple reasons.  First, the Court in that

case found that section 1581(i) was the later-enacted statute of the two and that no conflict

existed between the two statutes; neither of these aspects applies here.  *Id*. at 1284.  Second, the

Endangered Species Act is a different piece of legislation than the AMLRCA, and, when looking

at the specificity of the jurisdictional grant in section 2440, it is necessary to also look to the

breadth of the Acts as a whole, not just compare the jurisdictional language in sections 1540(c)

and (g) with section 2440.[10]  Third, the Court in *Salmon Spawning* provided little reasoning for

its specificity finding, stating only that section 1581(i) was more specific, then largely discussing

the fact that section 1581(i) was enacted subsequent to the Endangered Species Act.  *Id*. at 1284-

85.  Fourth, as with the other cases on which Southern Cross relies, 16 U.S.C. §§ 1540(c) and (g)

do not contain an exclusivity provision.  Finally, we respectfully submit that the Court may have

erred when it declared section 1581(i) more specific, given that, as stated above, section 1581(i)

is a residual jurisdictional provision that broadly captures ***all*** laws of the United States regarding

subjects as varied as embargoes, quantitative restrictions, tariffs, duties, and certain fees and

taxes.  28 U.S.C. § 1581(i).  Meanwhile, sections 1540(c) and (g) only provide jurisdiction for

---

[10]  This is especially so because 16 U.S.C. § 2440 refers to cases arising out of "any provision of this chapter or regulation," meaning that the scope of the AMLRCA as a whole is relevant to the determination of specificity.

suits specifically related to the Endangered Species Act, which protects imperiled species, a narrower category than the various subjects enumerated in section 1581(i).

At bottom, the authorities cited by Southern Cross do not address a similar situation to the one here, where the jurisdictional statute competing with this Court's residual jurisdictional provision was enacted later in time, is more specific, and includes explicit exclusivity language. Accordingly, and for the reasons stated above, the Court lacks jurisdiction over this case.

## <u>CONCLUSION</u>

For these reasons, and those stated in our motion to dismiss, we respectfully request that the Court dismiss the complaint for lack of jurisdiction.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

/s/ L. Misha Preheim
L. MISHA PREHEIM
Assistant Director

s/Sosun Bae
SOSUN BAE
Senior Trial Counsel
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington D.C. 20044
Tel: (202) 305-7568
Fax: (202) 514-8640
Email: Sosun.Bae@usdoj.gov

Dated: January 27, 2023                    Attorneys for Defendant

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rule 2(b) of the Court's Standard Chambers Procedures, defendant's counsel certifies that this motion complies with the Court's type-volume limitation rules.  According to the word count calculated by the word processing system with which the brief was prepared, this brief contains a total of 4,907 words.

<u>s/ Sosun Bae</u>

January 27, 2023

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 27th day of January, 2023, I electronically filed a copy of the foregoing using the CM/ECF system, which sent a notification of such filing to counsel of record.

<u>/s/ Sosun Bae</u>
Sosun Bae