

CHAMBERS OF
TIMOTHY M. REIF
JUDGE

UNITED STATES COURT OF INTERNATIONAL TRADE
ONE FEDERAL PLAZA
NEW YORK, N.Y. 10278-0001

June 14, 2023

**VIA CM/ECF**

      Re:    *Southern Cross Seafoods, LLC v. United States et al.*
               Court No. 22-00299

Dear Counsel:

     Oral argument in this action is scheduled for June 21, 2023, at 10:00 am ET in Courtroom No. 1 of the U.S. Court of International Trade, One Federal Plaza, New York, New York, with the option to appear via video conference. In preparation for oral argument, the court would like counsel to be prepared to address the following issues. As the court continues to review the documents in this case or as the argument on Thursday progresses, the court may decide to ask additional questions.

     Please be advised that the court prefers to conduct oral argument interactively, allowing each party to respond to the question presented before moving on to the next question. To facilitate this interaction, counsel are welcome to remain seated for the duration of the hearing.

**I.**     **<u>Whether the denial by the National Marine Fisheries Service ("NMFS") of the application by Southern Cross Seafoods, LLC for a preapproval certificate constitutes an "embargo[] or other quantitative restriction[] on the importation of merchandise" under 28 U.S.C. § 1581(i)(1)(C) and (D)</u>**

1.     What is the relevance, as to the alleged "embargo," of the requirement for a preapproval certificate "to import *each shipment*" of frozen Patagonian toothfish ("toothfish"), 50 C.F.R. § 300.105(a), specific to a single company? Specifically, if the alleged "embargo" applies only to individual shipments and individual applications before NMFS, should the court understand that an "embargo" exists on all frozen toothfish from Food and Agriculture Organization of the United Nations Statistical Subarea 48.3 ("Subarea 48.3") in the South Georgia fishery?

2. Has NMFS ever previously denied the issuance of a preapproval certificate pursuant to 50 C.F.R. § 300.105 or in a circumstance that prevented a party from importing toothfish or certain Antarctic marine living resources?

3. The Supreme Court has stated that "not every governmental importation prohibition is an embargo." *K Mart Corp. v. Cartier, Inc.*, 485 U.S. 176, 187 (1988). In addition, the U.S. Court of International Trade ("USCIT") does not have jurisdiction "to review challenges to conditions of importation." *Id.* at 189.

    a. Considering the above points, does the provision that it is "unlawful" to "import" Antarctic marine living resources, such as toothfish, "harvested in violation of a conservation measure in force" under the Antarctic Marine Living Resources Convention Act ("AMLRCA"), 16 U.S.C. § 2435(3), constitute an embargo? Please respond with reference to the cases and regulations relied upon in plaintiff's briefs and defendants' responses thereto without repeating arguments already presented to the court. *See* Pl.'s Resp. in Opp'n to Defs.' Mot. Dismiss ("Pl. Resp.") at 12-14 (citing 19 C.F.R. § 12.60 (1987); *Humane Soc'y of the United States v. Brown*, 19 CIT 1104, 901 F. Supp. 338 (1995); *Earth Island Inst. V. Christopher*, 6 F.3d 648 (9th Cir. 1993); and *Int'l Labor Rights Fund v. Bush*, 357 F. Supp. 2d 204 (D.D.C. 2004), ECF No. 26; *see also* Defs.' Reply Supp. Mot. Dismiss ("Def. Reply Br.") at 2-3, ECF No. 28.

    b. How should the court weigh the fact that 50 C.F.R. § 300.105(d) states that NMFS "may issue" a preapproval certificate?

    c. In conjunction with 50 C.F.R. § 300.105(d), what is the significance of the language in 50 C.F.R. § 300.105(h)(2) (emphasis supplied), that "NMFS *will not* issue a preapproval certificate for . . . [toothfish] . . . [d]etermined to have been harvested or transshipped in contravention of any [Commission on the Convention for Antarctic Marine Living Resources] Conservation Measure in force at the time of harvest or transshipment"?

    d. For purposes of determining jurisdiction, when considering whether an embargo exists under 28 U.S.C. § 1581(i)(1)(C), what would be the parameters of the alleged embargo under 50 C.F.R. § 300.105(d) and (h)(2)?

4. How should this court construe the instant statute and regulation in light of *Native Federation*, in which this court specified that section 9(c) of the Endangered Species Act did not "forbid trade in species protected under the Convention [on International Trade in Endangered Species of Wild Fauna and Flora]. Rather, it mandates compliance with the Convention, which 'regulates international trade in wild species . . . through the requirement that certain forms of documents must accompany shipments of protected species'"? *Native Federation of Madre De Dios River and Tributaries v. Bozovich Timber Products, Inc.*, 31 CIT 585, 593,

    491 F. Supp. 2d 1174, 1182 (2007) (quoting *Cayman Turtle Farm, Ltd. v. Andrus*, 478 F. Supp. 125, 130 (D.D.C. 1979)).

5.     Please address — by reference to specific language — whether the "ultimate purpose" of the AMLRCA and its implementing regulations supports the conclusion that the law provides for an embargo. *K Mart Corp.*, 485 U.S. at 187 (quoting *K Mart Corp.*, 485 U.S. at 195 (Scalia, J., dissenting)).

6.     Plaintiff argues that even if the denial by NMFS is not an embargo "it is certainly a 'quantitative restriction' that would provide this Court with subject matter jurisdiction pursuant to 28 U.S.C. § 1581(i)(1)(C)." Pl. Resp. at 8. Defendants allege that the denial is not such a quantitative restriction because there is no "quota" or "limit on the quantity of a product that may be imported or exported." Def. Reply Br. at 6-7 (citing *Maple Leaf Fish Co. v. United States*, 762 F.2d 86, 88 (Fed. Cir. 1985); *Best Foods, Inc. v. United States*, 218 F. Supp. 576, 577 (Cust. Ct. 1963); *Bethlehem Steel Corp. v. United States*, 28 CIT 154, 159 n.8, 316 F. Supp. 2d 1309, 1314 n.8 (2004)).

    a.     Do the parties agree on the meaning of "other quantitative restrictions" in 28 U.S.C. § 1581(i)(1)(C)?

    b.     How, if at all, do these decisions or others address the "other quantitative restrictions" language in 28 U.S.C. § 1581(i)(1)(C)?

7.     Plaintiff argues both that "*NMFS's action is* an 'embargo'" and that "*[b]y its decision* of September 15, 2022, NMFS was *administering and enforcing* 16 U.S.C. § 2435(3)." Pl. Resp. at 8. Based on plaintiff's two arguments, and the language of 28 U.S.C. § 1581(i)(1)(C) regarding "any law of the United States providing for . . . embargoes or other quantitative restrictions," and the "administration and enforcement" thereof, *id.* § 1581(i)(1)(D), please confirm whether the proper focus of the court as to any provision for such embargoes or restrictions is on the language of the AMLRCA and its implementing regulations or on their *application* in this instance.

II.     **Whether exclusive jurisdiction lies in the district courts under 16 U.S.C. § 2440 or in this Court under 28 U.S.C. § 1581(i)(1)(C) and (D)**

1.     Can a "repeal by implication," *Posadas v. Nat'l City Bank of New York*, 296 U.S. 497, 503 (1936), of 28 U.S.C. § 1581(i) by 16 U.S.C. § 2440 be reconciled when read with 16 U.S.C. § 2442(a), which states in relevant part that "[n]othing in this chapter shall be construed as contravening or superseding the provisions of any statute enacted before Nov. 8, 1984, which may otherwise apply to Antarctic marine living resources"?

2.     Plaintiff argues that 16 U.S.C. § 2440 lacks the express designation necessary to constitute an implicit repeal of 28 U.S.C. §1581, and therefore § 2440 provides

the district courts with jurisdiction over 16 U.S.C. § 2435(1)-(7), except with regard to cases or controversies involving embargoes or other quantitative restrictions. Pl. Resp. at 18. Please explain how the actions covered under 16 U.S.C. § 2435(3), which provides context on "unlawful activities" covered by the Convention, including the import and export of Antarctic marine living resources, can be distinguished from embargoes or other quantitative restrictions covered by 28 U.S.C. § 1581.

3. Both parties discuss *Orleans Int'l, Inc. v. United States*, 344 F.3d 1375 (Fed. Cir. 2003), and *Vivitar Corp. v. United States*, 761 F.2d 1552 (Fed. Cir. 1985), in their briefs. *See* Pl. Resp. at 8-11; Def. Reply Br. at 8-11. Please address the relevance, if any, of congressional intent in the legislative history of jurisdictional statutes to the court's interpretation of exclusive jurisdiction based on the test developed by the U.S. Court of Appeals for the Federal Circuit in *Vivitar* and *Orleans*.

4. Were the court to conclude that it lacks subject matter jurisdiction, should the court transfer the instant action to another court pursuant to 28 U.S.C. § 1631?

The court prefers to discuss any confidential information all at once, following the public session, at which time those without authorized access to confidential information will be asked to leave the Courtroom or be dropped from the videoconference.

Parties may raise other issues that they consider to be of highest importance. Thank you for your assistance and cooperation.

Sincerely,

/s/ Timothy M. Reif

_____
Timothy M. Reif, Judge