**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  THE HONORABLE TIMOTHY M. REIF, JUDGE**

| | | |
|---|---|---|
| SOUTHERN CROSS SEAFOODS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 22-00299 |
| | ) | |
| UNITED STATES OF AMERICA, and | ) | |
| NATIONAL MARINE FISHERIES SERVICE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S NOTICE OF SUBSEQUENT AUTHORITY**

Plaintiff, Southern Cross Seafoods, LLC, ("Southern Cross"), hereby provides the Court with notice of the following subsequent authority:  *Ninestar Corp. v. United States*, Court No. 23-00182, slip op. 23-169 (CIT Nov. 30, 2023) (attached).

*Ninestar* is relevant to a question asked by the Court in its June 14, 2023 letter (ECF 32): "Specifically, if the alleged 'embargo' applies only to individual shipments and individual applications before NMFS, should the court understand that an 'embargo' exists on all frozen toothfish from the Food and Agricultural Organization of the United Nations Statistical Subarea 48.3 ('Subarea 48.3') in the South Georgia fishery?"  In *Ninestar*, the plaintiffs challenged a decision by the interagency Forced Labor Enforcement Task Force ("FLETP") "to add Plaintiffs to the Entity List of the Uyghur Forced Labor Prevention Act ("UFLPA"). . . ."  Slip op. 23-169, at 2.  "The FLETF's decision to add Plaintiffs to the Entity List of the UFLPA presumptively prohibits, under section 307, the importation of any goods produced by Plaintiffs."  *Id.* at 3.  In *Ninestar*, the Court considered whether it possessed subject matter jurisdiction pursuant to 28 U.S.C. § 1581(i) and, in particular, whether the UFLPA is a law

providing for embargoes.  The Court answered in the affirmative:  "Because the UFLPA is a law providing for embargoes within the meaning of 28 U.S.C. § 1581(i), challenges to agency action implementing the UFLPA fall within the CIT's exclusive jurisdiction."  *Id.*  In reaching this conclusion, the Court noted that "[t]he UFLPA establishes a presumption that 'prohibit[s]' the 'importation' of merchandise."  *Id.* at 14.  The Court understood that in the case before it (as well as in several other cases finding the existence of embargoes), there existed the need to make "fact-specific determinations as to which entities and goods are embargoed."  *Id.* at 15.  The Court further understood that "'the importation of ***[Plaintiffs'] goods*** .  .  . is prohibited' by operation of section 307" and that, "[u]nder K Mart, that is an embargo."  *Id.* at 16 (emphasis added).

In this manner, *Ninestar* directly addresses the question asked by the Court in its June 14, 2023 letter.  Government action that bars the importation of individual shipments is an embargo within the meaning of 28 U.S.C. § 1581(i).

<div style="margin-left: 40%;">

Respectfully submitted,

WHITE & CASE LLP

 /s/ *David E. Bond*
David E. Bond (DC Bar No. 453711)
Earl W. Comstock (DC Bar No. 1019329)
Lucius B. Lau (DC Bar No. 446088)
Cristina M. Cornejo (DC Bar No. 1736447)

701 Thirteenth Street NW
Washington, DC 20005
202-729-2307
dbond@whitecase.com
earl.comstock@whitecase.com
alau@whitecase.com

Attorneys for
Southern Cross Seafoods, LLC

</div>

December 1, 2023

### <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rule 2(b) of the Court's Standard Chambers Procedures, the undersigned counsel certifies that Plaintiff's Notice of Subsequent Authority complies with the Court's type-volume limitation rules.  According to the word count calculated by the word processing system with which the response was prepared, the response contains a total of 367 words.

<u>*/s/ David E. Bond*</u>

December 1, 2023

ATTACHMENT

Slip Op. 23-169

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| NINESTAR CORPORATION, ZHUHAI NINESTAR INFORMATION TECHNOLOGY CO., LTD., ZHUHAI PANTUM ELECTRONICS CO., LTD., ZHUHAI APEX MICROELECTRONICS CO., LTD., GEEHY SEMICONDUCTOR CO., LTD., ZHUHAI G&G DIGITAL TECHNOLOGY CO., LTD., ZHUHAI SEINE PRINTING TECHNOLOGY CO., LTD., and ZHUHAI NINESTAR MANAGEMENT CO., LTD., <br><br>                     **Plaintiffs,** <br><br>          v. <br><br> UNITED STATES OF AMERICA; DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CUSTOMS AND BORDER PROTECTION; FORCED LABOR ENFORCEMENT TASK FORCE; ALEJANDRO MAYORKAS, in his official capacity as the Secretary of the Department of Homeland Security; TROY A. MILLER, in his official capacity as the Senior Official Performing the Duties of the Commissioner for U.S. Customs and Border Protection; and ROBERT SILVERS, in his official capacity as Under Secretary for Office of Strategy, Policy, and Plans and Chair of the Forced Labor Enforcement Task Force, <br><br>                     **Defendants.** | Before: Gary S. Katzmann, Judge<br>Court No. 23-00182 |

## <u>OPINION</u>

[ Plaintiffs are likely to establish that the court has subject matter jurisdiction over this action. ]

Court No. 23-00182                                                                 Page 2

Dated: <u>November 30, 2023</u>

<u>Gordon D. Todd</u>, <u>Michael E. Murphy</u>, <u>Michael E. Borden</u>, <u>Cody M. Akins</u>, Sidley Austin LLP, of Washington, D.C., for Plaintiffs Ninestar Corporation, Zhuhai Ninestar Information Technology Co., Ltd., Zhuhai Pantum Electronics Co., Ltd., Zhuhai Apex Microelectronics Co., Ltd., Geehy Semiconductor Co., Ltd., Zhuhai G&G Digital Technology Co., Ltd., Zhuhai Seine Printing Technology Co., Ltd., and Zhuhai Ninestar Management Co., Ltd.

<u>Monica P. Triana</u>, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, N.Y., for Defendant United States.  With her on the brief were <u>Brian M. Boynton</u>, Principal Deputy Assistant Attorney General, <u>Patricia M. McCarthy</u>, Director, <u>Claudia Burke</u>, Deputy Director, <u>Justin R. Miller</u>, Attorney-In-Charge International Trade Field Office, and <u>Guy Eddon</u>, Trial Attorney.

Katzmann, Judge:  Plaintiffs Ninestar Corporation and its corporate affiliates are Chinese companies—specifically, manufacturers and sellers of laser printers and printer-related products—who initiated this suit against Defendants the United States and various federal agencies and officials before the U.S. Court of International Trade ("CIT").  Plaintiffs challenge a decision by the interagency Forced Labor Enforcement Task Force ("FLETF") to add Plaintiffs to the Entity List of the Uyghur Forced Labor Prevention Act ("UFLPA").  <u>See</u> Pub. L. No. 117-78, 135 Stat. 1525 (2021); <u>see also</u> <u>Notice Regarding the Uyghur Forced Labor Prevention Act Entity List</u>, 88 Fed. Reg. 38080, 38082 (Dep't Homeland Sec. June 12, 2023) ("<u>Listing Notice</u>").  In particular, Plaintiffs allege that the FLETF's decision to add Plaintiffs to the Entity List was arbitrary and capricious under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), because the FLETF failed to adequately explain its decision.  <u>See</u> Compl. ¶¶ 57–62, Aug. 22, 2023, ECF No. 8.

Following reports of forced labor and ongoing genocide in the Xinjiang Uyghur Autonomous Region of the People's Republic of China ("China"), Congress passed the UFLPA. Per the text of the statute, the UFLPA is designed to "strengthen the prohibition against the importation of goods made with forced labor, including by ensuring that the Government of the People's Republic of China does not undermine the effective enforcement of section 307 of the

Tariff Act of 1930." Pub. L. 177-78, § 1(1), 135 Stat. at 1525. Section 307 of the Tariff Act, moreover, prohibits the importation of merchandise created wholly or in part by forced labor. See 19 U.S.C. § 1307. The FLETF's decision to add Plaintiffs to the Entity List of the UFLPA presumptively prohibits, under section 307, the importation of any goods produced by Plaintiffs. See Pub. L. 177-78, § 3(a), 135 Stat. at 1529.

That prohibition is now in effect. Plaintiffs have filed the instant Motion for Preliminary Injunction, which asks the court to (1) stay the FLETF's decision to add Plaintiffs to the Entity List and (2) prevent Defendants from taking any action predicated on the Listing Decision against the importation of Plaintiffs' goods. See Mot. for Prelim. Inj. at 17, Aug. 22, 2023, ECF No. 9 ("PI Mot."). Among other defenses to Plaintiffs' Motion for Preliminary Injunction, Defendants argue that the CIT lacks subject matter jurisdiction over Plaintiffs' challenge to the FLETF's listing decision. See Defs.' Mot. to Dismiss & Resp. to Mot. for Prelim. Inj. at 15–18, Oct. 3, 2023, ECF No. 24 ("Defs.' Br.").

Focusing only on the threshold issue of jurisdiction, the court concludes that Plaintiffs are likely to establish subject matter jurisdiction. Because the UFLPA is a law providing for embargoes within the meaning of 28 U.S.C. § 1581(i), challenges to agency action implementing the UFLPA fall within the CIT's exclusive jurisdiction. All other contentions are left to further proceedings regarding Plaintiffs' Motion for Preliminary Injunction.

## BACKGROUND

### I.    *Legal Background*

Federal law has long prohibited the importation of foreign goods made by forced labor. Section 307 of the Tariff Act of 1930 states in relevant part:

> All goods, wares, articles, and merchandise mined, produced, or manufactured wholly or in part in any foreign country by . . . forced labor . . . shall not be entitled to entry at any of the ports of the United States, and the importation thereof is hereby prohibited . . . .

19 U.S.C. § 1307; see also infra note 11 (tracing the prohibition on importing goods made with

involuntary labor to 1890).  Section 307 further defines forced labor as "all work or service which

is exacted from any person under the menace of any penalty for its nonperformance and for which

the worker does not offer himself voluntarily" and includes forced child labor.  19 U.S.C. § 1307.

In the United States–Mexico–Canada Agreement Implementation Act of 2020, Congress

directed the President to establish a Forced Labor Enforcement Task Force (the "FLETF") "to

monitor United States enforcement of the prohibition under section 307 of the Tariff Act of 1930."

Pub L. No. 116-113, § 741(a), 134 Stat. 11, 88 (2020) (codified at 19 U.S.C. § 4681).  Per the

statute and the President's subsequent Executive Order, the FLETF is chaired by the Secretary of

the Department of Homeland Security ("DHS") and comprises seven member agencies: DHS, the

U.S. Trade Representative, and the Departments of Justice, Labor, State, Treasury, and Commerce.

See 19 U.S.C. § 4681(b)(1); Executive Order No. 13923 § 2, 85 Fed. Reg. 30587, 30587 (May 20,

2020).[1]   The FLETF also includes six observer agencies: the Departments of Energy and

Agriculture, the U.S. Agency for International Development, the National Security Council,

Customs, and U.S. Immigration and Customs Enforcement Homeland Security Investigations.

Listing Notice, 88 Fed. Reg. at 38081.

---

[1] DHS, as the FLETF Chair, may invite representatives from other agencies to participate as either members or observers.  See Executive Order No. 13923 § 2.  DHS invited the Department of Commerce to join the FLETF as a member.  See Listing Notice, 88 Fed. Reg. at 38081 n.1.

In December 2021, Congress passed and the President signed into law the UFLPA, Pub. L. No. 117-78, 135 Stat. 1525.  Congress declared that it was the policy of the United States to "strengthen the prohibition against the importation of goods made with forced labor, including by ensuring that the Government of the People's Republic of China does not undermine the effective enforcement of section 307 of the Tariff Act of 1930 (19 U.S.C. § 1307)."  UFLPA, Pub. L. 177-78, § 1(1), 135 Stat. 1525, 1525 (2021).  Other aims that Congress identified included "to lead the international community in ending forced labor practices . . . by stopping the importation of any goods made with forced labor"; "to actively work to prevent, publicly denounce, and end human trafficking including with respect to forced labor"; "to regard the prevention of atrocities as it is in the national interest of the United States, including efforts to prevent torture, enforced disappearances, severe deprivation of liberty, including mass internment, arbitrary detention, and widespread and systematic use of forced labor, and persecution targeting any identifiable ethnic or religious group"; and "to address gross violations of human rights in the Xinjiang Uyghur Autonomous Region."  Id. § 1(2), (4)–(6), 135 Stat. at 1525.

The UFLPA implements those policies mainly in two parts.  First, the UFLPA requires that the FLETF "develop a strategy for supporting enforcement of Section 307 of the Tariff Act of 1930 (19 U.S.C. 1307) to prevent the importation into the United States of goods mined, produced, or manufactured wholly or in part with forced labor in the People's Republic of China."  Id. § 2(c), 135 Stat. at 1526.  The FLETF published this strategy in June 2022.  See DHS, Strategy to Prevent the Importation of Goods Mined, Produced, or Manufactured with Forced Labor in the People's

Court No. 23-00182                                                                    Page 6

Republic of China (2022) ("FLETF Strategy").[2]  As part of that strategy, the FLETF must create

and update four statutory sub-lists:

> (i) a list of entities in the Xinjiang Uyghur Autonomous Region that mine, produce, or manufacture wholly or in part any goods, wares, articles and merchandise with forced labor;
>
> (ii) a list of entities working with the government of the Xinjiang Uyghur Autonomous Region to recruit, transport, transfer, harbor or receive forced labor or Uyghurs, Kazakhs, Kyrgyz, or members of other persecuted groups out of the Xinjiang Uyghur Autonomous Region;
>
> . . .
>
> (iv) a list of entities that exported products described in clause (iii) from the People's Republic of China into the United States; [and]
>
> (v) a list of facilities and entities, including the Xinjiang Production and Construction Corps, that source material from the Xinjiang Uyghur Autonomous Region or from persons working with the government of the Xinjiang Uyghur Autonomous Region or the Xinjiang Production and Construction Corps for purposes of the ''poverty alleviation'' program or the ''pairing-assistance'' program or any other government labor scheme that uses forced labor . . . .

UFLPA, Pub. L. 177-78, § 3(d)(2)(B), 135 Stat. at 1527; see also FLETF Strategy, supra, at 22–

25.  The UFLPA Entity List refers to "a consolidated register of the above four lists."  Listing

Notice, 88 Fed. Reg. at 38081.  The statute requires that the FLETF update the strategy annually.

See UFLPA, Pub. L. 177-78, § 3(e)(2), 135 Stat. at 1527; see also FLETF Strategy, supra, at 58

("The FLETF also intends to update the UFLPA Entity List multiple times per year.").[3]  An entity

---

[2] The court may take note of matters of public record, including public agency reports.  See, e.g., Sebastian v. United States, 185 F.3d 1368, 1374 (Fed. Cir. 1999).

[3] Moreover, "[a]ny FLETF member agency may submit a recommendation to the FLETF Chair to add an entity to the UFLPA Entity List.  Following review of the recommendation by the FLETF member agencies, the decision to add an entity to the UFLPA Entity List will be made by majority vote of the FLETF member agencies."  Listing Notice, 88 Fed. Reg. at 38082.

added to the Entity List may petition the FLETF for its removal.  See, e.g., Listing Notice, 88 Fed.

Reg. at 38082.

Second, the UFLPA requires Customs to presumptively prohibit, under section 307 of the

Tariff Act, the imports of entities on the Entity List.  The statute reads in relevant part:

> (a) In General.—[Customs] shall, except as provided by subsection (b), apply a
> presumption that, with respect to any goods, wares, articles, and merchandise
> mined, produced, or manufactured wholly or in part in the Xinjiang Uyghur
> Autonomous Region of the People's Republic of China or produced by an entity on
> a list required by clause (i), (ii), (iv) or (v) of section 2(d)(2)(B)—
>
> > (1) the importation of such goods, wares, articles, and merchandise is
> > prohibited under section 307 of the Tariff Act of 1930 (19 U.S.C. 1307);
> > and
> >
> > (2) such goods, wares, articles, and merchandise are not entitled to entry at
> > any of the ports of the United States.

Pub. L. No. 177-78, § 3(a), 135 Stat. at 1529.  Customs applies the rebuttable presumption

requirement of the UFLPA through its general authority to examine and decide whether to detain,

release, exclude, or seize merchandise under 19 U.S.C. § 1499 and associated regulations.  See

Customs, Uyghur Forced Labor Prevention Act: U.S. Customs and Border Protection Operational

Guidance for Importers 7 (2022), https://www.cbp.gov/sites/default/files/assets/documents/2022-

Jun/CBP_Guidance_for_Importers_for_UFLPA_13_June_2022.pdf  ("Operational  Guidance").

Customs  "will  provide  importers  with  notice,  in  accordance  with  the  customs  laws,  when

enforcement actions are taken on their shipments."  Id.

An  affected  importer  may  rebut  the  UFLPA's  presumption  and  demonstrate  the

admissibility of the merchandise.  The UFLPA requires Customs to enforce the presumption unless

it determines:

(1) that the importer of record has—

(A) fully complied with [guidance in the <u>FLETF Strategy</u>] and any regulations issued to implement that guidance; and

(B) completely and substantively responded to all inquiries for information submitted by the Commissioner to ascertain whether the goods were mined, produced, or manufactured wholly or in part with forced labor; and

(2) by clear and convincing evidence, that the good, ware, article, or merchandise was not mined, produced, or manufactured wholly or in part by forced labor.

<u>Id.</u> § 3(b), 135 Stat. at 1529.  Customs has a process for requesting an exception to the rebuttable presumption and for furnishing information that would meet the UFLPA's admissibility requirements.  <u>See</u> <u>Operational Guidance</u>, <u>supra</u>, at 9–10.  The <u>FLETF Strategy</u> contains detailed guidance on how importers may demonstrate the admissibility of their merchandise.  <u>Supra</u>, at 40–51.  If Customs decides to exclude the merchandise, the importer may challenge that decision by filing a protest under 19 U.S.C. § 1514(a)(4) and 19 C.F.R. part 174.  <u>See</u> <u>Operational Guidance</u>, <u>supra</u>, at 7–8.

## II.     *Factual Background and Procedural History*

The court recounts only those assertions pleaded in the Complaint that are relevant to assessing subject matter jurisdiction.  As has been noted, Plaintiff Ninestar Corporation is a Chinese company that manufactures and sells laser printers, integrated circuit chips, and printer consumables such as toner and inkjet cartridges.  Compl. ¶¶ 7, 33.  All of the other plaintiffs are corporate affiliates of Ninestar.  <u>Id.</u> ¶¶ 8–14.  Together, Plaintiffs manufacture and sell, or support the manufacture and sale of, products directly and indirectly to numerous U.S.-based customers.  <u>Id.</u> ¶ 34.  According to the Complaint, prior to June 2023, Customs did not communicate to Plaintiffs that any of Plaintiffs' products violate section 307 of the Tariff Act.  <u>See</u> <u>id.</u> ¶ 37.

On June 9, 2023, the FLETF announced that Plaintiffs would be added to the UFLPA's Entity List.[4]  Three days later, DHS, on behalf of the FLETF, published an updated Entity List in the <u>Federal Register</u> (the "Listing Decision").  <u>See Listing Notice</u>, 88 Fed. Reg. at 38082. Specifically, Plaintiffs were added to the second sub-list pursuant to section 2(d)(2)(B)(ii) of the UFLPA, which contains the entities determined to be working with the Government of the Xinjiang Uyghur Autonomous Region to "recruit, transport, transfer, harbor or receive forced labor or Uyghurs, Kazakhs, Kyrgyz, or members of other persecuted groups out of the Xinjiang Uyghur Autonomous Region."  <u>See id.</u>  Plaintiffs allege that the listing was accompanied by no further explanation.  Plaintiffs received public notice of a process to request the FLETF for removal from the Entity List, <u>see id.</u>, but Plaintiffs did not submit such a removal request, <u>see</u> Compl. ¶ 45.

On August 22, 2023, Plaintiffs filed the Complaint initiating this action before the CIT. <u>See id.</u>  Plaintiffs allege that they are "unaware of any facts relating to their respective businesses or otherwise supporting such an allegation," and that "[w]ithout learning the bases upon which Defendants added Plaintiffs to the UFLPA Entity List, Plaintiffs are unable meaningfully to seek removal from the list or otherwise challenge this final agency action."  <u>See id.</u> ¶ 45.  The Complaint pleads one cause of action for arbitrary and capricious agency action violating the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), for failure to provide "<u>any</u> explanation[] for adding Plaintiffs to the UFLPA Entity List."  Compl. ¶ 62.  Plaintiffs further assert that they are not "able to seek relief under the APA challenging the action as contrary to the evidence in the administrative record,

---

[4] <u>See</u> Press Release, Dep't of Homeland Sec., DHS to Ban Imports from Two Additional PRC-Based Companies as Part of Its Enforcement of the Uyghur Forced Labor Prevention Act (UFLPA) (June 9, 2023), https://www.dhs.gov/news/2023/06/09/dhs-ban-imports-two-additional-prc-based-companies-part-its-enforcement-uyghur.

as Plaintiffs know neither the bases for the charge, nor the contents of the record.  After filing, Plaintiffs will seek the record and, when appropriate, seek additional relief."  Id. ¶ 46.

On the same day, Plaintiffs also filed a motion for preliminary injunction requesting that the court (1) stay the Listing Decision and (2) prevent Defendants from taking any action against the importation of Plaintiffs' goods predicated on the Listing Decision.  See PI Mot. at 17.  Defendants moved to dismiss the case and responded in opposition to Plaintiffs' Motion for Preliminary Injunction.  See Defs.' Br.  Plaintiffs filed a reply in support of their Motion.  See Pls.' Reply, Oct. 13, 2023, ECF No. 30.  A hearing on the Motion for Preliminary Injunction is scheduled for Thursday, December 7, 2023, and the briefing on Defendants' Motion to Dismiss is still underway and is not yet complete.  See Order, Nov. 15, 2023, ECF No. 56.[5]

Defendants have also filed a confidential administrative record that Plaintiffs may review under the terms of a judicial protective order, along with a privilege log documenting Defendants' reasons for redaction.  See Conf. Admin. R., Oct. 24, 2023, ECF No. 41; Am. Protective Order, Oct. 24, 2023, ECF No. 40; Privilege Redaction Log, Oct. 26, 2023, ECF No. 43.  Pursuant to 28 U.S.C. § 2635(d)(2)[6] and USCIT Administrative Order No. 21-01, the court further ordered that

---

[5] The hearing on Plaintiffs' Motion for Preliminary Injunction and the briefing on Defendants' Motion to Dismiss have been postponed twice because the parties have been exploring the possibility of negotiating a process for the FLETF's consideration of a request of removal from the Entity List.  See Joint Status Report & Mot. to Modify the Schedule at 2, Nov. 13, 2023, ECF No. 55; Order, Nov. 15, 2023, ECF No. 56.  Plaintiffs state that they have provided Defendants with a proposed settlement process that would include disclosing additional information from the administrative record to Ninestar and establishing procedures for consideration of Ninestar's request for removal.  Joint Status Report at 2.  Defendants are considering that proposal in coordination with all FLETF members.  Id.

[6] "The agency shall identify and transmit under seal to the clerk of the court any document, comment, or other information that was obtained on a confidential basis and that is required to be transmitted to the clerk under paragraph (1) of this subsection. . . . The confidential or privileged status of such material shall be preserved in the civil action, but the court may examine such

Defendants file paper copies of the fully unredacted administrative record and move to treat such submissions as highly sensitive documents,[7] see Order, Oct. 27, 2023, ECF No. 44, and the court granted that motion, see Order, Oct. 30, 2023, ECF No. 49.  The paper copies of the fully unredacted administrative record are not available to Plaintiffs.  Because this opinion addresses only the issue of jurisdiction, no review of the record is necessary.

## STANDARD OF REVIEW

A preliminary injunction is an extraordinary remedy that is "never awarded as of right." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008) (citing Munaf v. Geren, 553 U.S. 674, 689–90 (2008)); see also Invenergy Renewables LLC v. United States, 44 CIT __, __, 422 F. Supp. 3d 1255, 1280 (2019).  The court weighs four factors in ruling on a motion for preliminary injunction: (1) whether the plaintiff is likely to succeed on the merits; (2) whether the plaintiff would suffer irreparable harm without the preliminary injunction; (3) whether the balance of hardships favors the plaintiff; and (4) whether the preliminary injunction would serve the public interest.  See, e.g., Winter, 555 U.S. at 20; Silfab Solar, Inc. v. United States, 892 F.3d 1340, 1345 (Fed. Cir. 2018); Invenergy, 422 F. Supp. 3d at 1280.  "[T]he movant, by a clear showing, carries the burden of persuasion" on a motion for preliminary injunction.  Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (internal quotation marks, emphasis, and citation omitted).

---

material in camera and may make such material available under such terms and conditions as the court may order." Id. § 2635(d)(2) (emphasis added).

[7] Per USCIT Administrative Order 21-01, highly sensitive documents "are limited to documents containing information that has such a high level of sensitivity as to present a clear and compelling need to avoid filing on the existing CM/ECF system, such as certain privileged information or information the release of which could pose a danger of physical harm to any person."  Admin. Order 21-01, at 1.  Due to their sensitive nature, such documents "must be filed in paper format" and "may not be uploaded to CM/ECF."  Id. at 2.

Naturally, questions of jurisdiction "closely affect[]" the first prong: a plaintiff's likelihood of success on the merits of a case.  U.S. Ass'n of Imps. of Textiles & Apparel v. U.S. Dep't of Com., 413 F.3d 1344, 1348 (Fed. Cir. 2005).  Where there is no jurisdiction, a plaintiff is unable to succeed on the merits, and a preliminary injunction cannot issue.  Cf. Amsted Rail Co. v. U.S. Int'l Trade Comm'n, 46 CIT __, __, 600 F. Supp. 3d 1308, 1319 (2022), appeal dismissed, No. 2023-1355, 2023 WL 4346710 (Fed. Cir. July 5, 2023).  Moreover, where a court resolves a motion for preliminary injunction before a motion to dismiss is fully briefed, the court must evaluate subject matter jurisdiction in ruling on the preliminary injunction motion.  See U.S. Ass'n, 413 F.3d at 1348; see also, e.g., Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States, 43 CIT __, __, 393 F. Supp. 3d 1271, 1273 n.3 (2019); Int'l Custom Prods., Inc. v. United States, 30 CIT 21, 21 n.1, 31 (2006).

Important issues of first impression and concerns of judicial economy counsel the court's review of subject matter jurisdiction now rather than later.  Neither the CIT nor any other federal court has yet issued a decision involving the UFLPA.  Defendants—the federal agencies and officials implementing Congress's directives combatting the trade of merchandise produced with forced labor—have taken the position that this case's challenge to agency action administering the UFLPA is not within the CIT's exclusive jurisdiction.  See Defs.' Br. at 15.  The matter has been fully briefed in the context of Plaintiffs' Motion for Preliminary Injunction.  In any event, because the "court may and should raise the question of its jurisdiction sua sponte at any time it appears in doubt," Arctic Corner, Inc. v. United States, 845 F.2d 999, 1000 (Fed. Cir. 1988); see also Amsted Rail, 600 F. Supp. 3d at 1319, and because the question presented implicates weighty principles of CIT jurisdiction, the court exercises its discretion to review the issue of jurisdiction before the

preliminary injunction hearing.  Moreover, addressing subject matter jurisdiction now is consistent

with treating jurisdiction as a threshold matter before the merits, see Steel Co. v. Citizens for a

Better Env't, 523 U.S. 83, 94–95 (1998), and will promote judicial economy in narrowing the

issues for any further proceedings regarding Plaintiffs' Motion for Preliminary Injunction.

## DISCUSSION

Plaintiffs request a preliminary injunction to stay the Listing Decision and to prevent

Defendants from taking any action predicated on the Listing Decision against the importation of

Plaintiffs' goods.  See PI Mot. at 17.  Defendants oppose, alleging among other arguments that the

court lacks subject matter jurisdiction to hear Plaintiffs' challenge to the UFLPA Listing Decision.

See Defs.' Br. at 15–18.  Reviewing that argument as part of the Motion for Preliminary Injunction,

the court concludes that Plaintiffs are likely to establish subject matter jurisdiction because the

UFLPA is a law providing for embargoes within the meaning of 28 U.S.C. § 1581(i).

Plaintiffs plead 28 U.S.C. § 1581(i) as the basis for jurisdiction over this action and further

specify subsection § 1581(i)(1)(C) in their Motion for Preliminary Injunction.  See Compl. ¶ 23;

PI Mot. at 12 n.3.  That subsection establishes the CIT's "exclusive jurisdiction of any civil action

commenced against the United States . . . that arises out of any law of the United States providing

for . . . embargoes or other quantitative restrictions on the importation of merchandise for reasons

other than the protection of the public health or safety."  28 U.S.C. § 1581(i)(1)(C) (emphasis

added).  Defendants, however, dispute that basis for subject matter jurisdiction and request

dismissal.  They argue that Plaintiffs' "addition to the UFLPA Entity List does not create an

'embargo,' nor does it constitute a 'quantitative restriction' on the amount of [P]laintiffs' goods

that may enter the United States."  Defs.' Br. at 16.  Distinguishing between the Listing Decision

itself and any later actions by Customs on the basis of the Listing Decision, Defendants contend

that "[p]lacement on the list may, at some later date, result in a decision by [Customs] to exclude

merchandise, but [P]laintiffs insist they are not challenging any such decision."  Id.  If Plaintiffs

are unable to establish the CIT's exclusive jurisdiction over an action, the action must be brought

in federal district court, so long as jurisdiction there is otherwise proper.  See Trayco, Inc. v. United

States, 994 F.2d 832, 836 (Fed. Cir. 1993).

As an initial matter, the text of the UFLPA clearly imposes an embargo within the meaning

of § 1581(i).  The Supreme Court has defined an embargo under § 1581(i) to be a "governmentally

imposed quantitative restriction—of zero—on the importation of merchandise."  K Mart Corp. v.

Cartier, Inc., 485 U.S. 176, 185 (1988).  The UFLPA establishes a presumption that "prohibit[s]"

the "importation" of merchandise.  Pub. L. No. 177-78, § 3(a)(1), 135 Stat. at 1529.  Moreover,

the presumption was imposed by Congress and is enforced by Customs without the involvement

of a third party.  See id.; see also K Mart, 485 U.S. at 185 (stressing that an embargo is "a

governmental restriction on the quantity of a particular product that will enter," not "a mechanism

by which a private party might, at its own option, enlist the Government's aid in restricting the

quantity of imports in order to enforce a private right").  Finally, the word "prohibit" and phrase

"not entitled to entry at any . . . ports" make clear that the presumption sets a quantitative restriction

of zero.  Pub. L. No. 177-78, § 3(a), 135 Stat. at 1529.

Defendants argue that Plaintiffs' addition to the Entity List does not establish an embargo

because the UFLPA's prohibition of imports is a presumption that may be rebutted.  See Defs.'

Br. at 15–18.  Specifically, the rebuttable presumption makes the UFLPA "strictly qualitative,"

rather than quantitative.  Defs.' Br. at 18.  But the CIT has exercised its § 1581(i)(1)(C) jurisdiction

over challenges arising under embargoes that, like the UFLPA's embargo, provide for the granting

of exemptions or reconsideration.  <u>See, e.g.</u>, <u>Humane Soc'y of U.S. v. Brown</u>, 19 CIT 1104, 1112,

901 F. Supp. 338, 346 (1995) (affirming § 1581(i)(1)(C) jurisdiction in a case arising under the

High Seas Driftnet Fisheries Enforcement Act, 16 U.S.C. § 1826a); <u>Nat. Res. Def. Council, Inc.</u>

<u>v. Ross</u>, 42 CIT __, __, 331 F. Supp. 3d 1338, 1353 (2018) (concluding that the CIT had

§ 1581(i)(1)(C) jurisdiction in a case arising under the Marine Mammal Protection Act, 16 U.S.C.

§ 1371, involving the endangered vaquita porpoise)[8]; <u>Sea Shepherd N.Z. v. United States</u>, 47 CIT

__, __, 639 F. Supp. 3d 1367, 1376 n.14 (2023) (same, involving the endangered Māui dolphin);

<u>see also</u> <u>Earth Island Inst. v. Brown</u>, 28 F.3d 76, 79 (9th Cir. 1994) (holding that a case arising

under the Marine Mammal Protection Act was within the CIT's exclusive jurisdiction over

embargoes).  Within that category of embargo provisions is section 307 itself, which allows

importers to submit proof to Customs that detained merchandise was not produced with forced

labor.  <u>See</u> 19 C.F.R. § 12.43(a); <u>see also</u> <u>infra</u> p. 16 (discussing the CIT's well-established

jurisdiction over section 307).  Surely all of these other embargoes cannot be characterized as

"qualitative" merely because they require fact-specific determinations as to which entities and

goods are embargoed.  Ultimately, Defendants' reliance on the rebuttable nature of the UFLPA's

import prohibition is not persuasive.  Whether (1) Plaintiffs attempt to provide corrective

information to Customs and Customs then determines that the presumption will not be lifted, or

(2) Plaintiffs do not attempt to provide corrective information to Customs at all and the

---

[8] <u>See also</u> <u>Nat. Res. Def. Council, Inc. v. Ross</u>, 42 CIT __, 331 F. Supp. 3d 1381 (2018); <u>Nat. Res. Def. Council, Inc. v. Ross</u>, 42 CIT __, 348 F. Supp. 3d 1306 (2018); <u>Nat. Res. Def. Council, Inc. v. Ross</u>, 774 F. App'x 646 (Fed. Cir. 2019); <u>Nat. Res. Def. Council, Inc. v. Ross</u>, 44 CIT __, 456 F. Supp. 3d 1292 (2020).

presumption continues to apply, "the importation of [Plaintiffs'] goods . . . is prohibited" by

operation of section 307.  Id. § 3(a)(1), 135 Stat. at 1529.  Under K Mart, that is an embargo.[9]

The broader issue with Defendants' reading is that it creates a jurisdictional barrier between

the UFLPA and section 307 when Congress was clear that the two statutes do not operate

independently from one another.  See Pls.' Reply at 2–3.  To the contrary, as noted above, the

UFLPA was passed "to strengthen the prohibition against the importation of goods made with

forced labor, including by ensuring that the Government of the People's Republic of China does

not undermine the effective enforcement of section 307." Pub. L. 177-78, § 1(1), 135 Stat. at 1525

(emphasis added).  Moreover, the UFLPA presumption that results from addition to the Entity List

is a prohibition on "importation of such goods . . . under section 307."  Id. § 3(a)(1), 135 Stat. at

1529 (emphasis added).[10]  The CIT has indeed adjudicated forced labor cases under section 307

---

[9] The CIT's exclusive jurisdiction also extends to civil actions concerning the "administration and
enforcement with respect to the matters referred to in" subparagraph (C).  28 U.S.C. §
1581(i)(1)(D).  Plaintiffs have not alleged that basis for jurisdiction, specifying only subparagraph
(C).  PI Mot. at 12 n.3.  But in prior cases involving section 307, the CIT has found jurisdiction
under both subparagraphs (C) and (D).  See Int'l Lab. Rts. Fund v. United States, 29 CIT 1050,
1053, 391 F. Supp. 2d 1370, 1373 (2005); McKinney v. U.S. Dep't of Treasury, 9 CIT 315, 319,
614 F. Supp. 1226, 1232 (1985).

The court does so here as well.  The broader sweep of subparagraph (D) captures the
"administration and enforcement" of embargoes.  Assuming arguendo Defendants' point that a
presumption is not an embargo, see Def.'s Br. at 16–18, subparagraph (D) nonetheless covers this
case.  The UFLPA makes clear that its presumption scheme is intended for the "effective
enforcement of section 307." Pub. L. 177-78, § 1(1), 135 Stat. at 1525 (emphasis added).  And
Defendants do not appear to dispute that section 307 establishes embargoes.  See Def.'s Br. at 18
n.9.  That would, by the text of the UFLPA, make the UFLPA a "law of the United States providing
for . . . enforcement" of embargoes.  28 U.S.C. § 1581(i)(1)(D).

[10] Further references to section 307 in the UFLPA abound.  The UFLPA requires the FLETF, in
consultation with the Secretary of Commerce and Director of National Intelligence, to develop a
strategy for supporting enforcement of section 307, see id. § 2(c), 135 Stat. at 1526; to describe
how Customs plans to enhance its use of legal authorities to ensure that no goods are entered at
any ports in violation of section 307, see id. § 2(d)(4), 135 Stat. at 1528; to describe additional

as part of its § 1581(i) jurisdiction over embargoes.  See Int'l Lab. Rts. Fund, 29 CIT at 1053, 391

F. Supp. 2d at 1373 (exercising jurisdiction under § 1581(i)(1)(C)–(D) over a challenge to

Customs's failure to investigate and enforce forced labor prohibition against cocoa imports from

Côte d'Ivoire); McKinney, 9 CIT at 319, 614 F. Supp. at 1232 (exercising jurisdiction under

§ 1581(i)(1)(C)–(D) over, but ultimately determining to be nonjusticiable, a challenge to a

Treasury Department decision not to implement Customs's determination that certain products

from the Soviet Union may have been produced by forced labor), aff'd, 799 F.2d 1544 (Fed. Cir.

1986); see also Int'l Lab. Rts. Fund v. Bush, 357 F. Supp. 2d 204, 208 (D.D.C. 2004) (concluding

that section 307 provides for an embargo under § 1581(i)(1)(C) because it "sets forth a policy that

may be invoked to prevent goods from entering the country").

        In short, if challenges to agency action implementing section 307 sit comfortably within

§ 1581(i), so, too, must challenges to agency action implementing the UFLPA.  To have

jurisdiction over section 307 but not over the UFLPA would otherwise lie in tension with

Congress's intention to create a coherent statutory scheme prohibiting the importation of goods

produced with forced labor.  Moreover, the prohibition on importing goods produced with

nonvoluntary labor is a longstanding principle of U.S. trade and customs law that falls within the

CIT's expertise.[11]  The relationship between the two statutes, therefore, further supports the

holding that the UFLPA is a law providing for embargoes within the meaning of § 1581(i).

---

tools necessary for Customs to enforce section 307, see id. § 2(d)(5), 135 Stat. at 1528; and to
formulate guidance to importers on the type, nature, and extent of evidence demonstrating that
goods from China do not violate section 307, see id. § 2(d)(6)(C), 135 Stat. at 1528.  Finally, the
statute borrows the meaning of forced labor from section 307.  See id. § 7(2)(A), 135 Stat. at 1528.

[11] Jurisdiction over the UFLPA is consistent with Congress's aims in passing the Customs Courts
Act of 1980, Pub. L. No. 96-417, 94 Stat. 1727, which enacted the CIT's jurisdictional provisions.
Like all federal courts, the CIT is a court "of limited jurisdiction."  Kokkonen v. Guardian Life

Ins. Co. of Am., 511 U.S. 375, 377 (1994). But the CIT is unique in the federal system as an Article III court with subject matter expertise in international trade and customs law. Indeed, "[i]t is . . . apparent from the legislative history of § 1581 and from the broad grant of exclusive jurisdiction given to the [CIT] that Congress had in mind consolidating this area of administrative law in one place," which would promote "a degree of uniformity and consistency" in international trade and customs law. Conoco, Inc. v. U.S. Foreign-Trade Zones Bd., 18 F.3d 1581, 1589 (Fed. Cir. 1994). The U.S. Court of Appeals for the Federal Circuit in Conoco affirmed the CIT's jurisdiction under § 1581(i) in part because the case "deal[t] with issues of governmental law and policy regarding customs and tariffs, the type of issues with which the [CIT] is acknowledged to have expertise." Id. Matters outside of the CIT's expertise, by contrast, may suggest a lack of subject matter jurisdiction. For instance, the Supreme Court in K Mart rejected the petitioner's arguments for jurisdiction in part because the statute at issue involved trademark law, which is not an area of expertise of either the CIT or its predecessor court, the Customs Court. See 485 U.S. at 189. Discussing the Customs Court Act, the Court concluded that there is no "indication . . . that Congress wished the new institutions [of the CIT and the Federal Circuit] to acquire expertise in the area in which its predecessors had none." Id.

Here, the subject matter of the underlying statute—a prohibition on goods produced with forced labor—falls comfortably within the CIT's expertise. Such prohibitions have a long history in U.S. trade and customs law. The first such prohibition in federal law, limited to imports made with convict labor, dates to the McKinley Tariff Act of 1890. See Pub. L. No. 51-1244, § 51, 26 Stat. 567, 624 (1890). The McKinley Tariff Act stated in relevant part:

> That all goods, wares, articles, and merchandise manufactured wholly or in part in any foreign country by convict labor, shall not be entitled to entry at any of the ports of the United States, and the importation thereof is hereby prohibited, and the Secretary of the Treasury is authorized to prescribe such regulations as may be necessary for the enforcement of this provision.

Id.

Section 307 of the Tariff Act of 1930 expanded that prohibition to any products of convict, forced, and indentured labor. See 19 U.S.C. § 1307; see also Christopher A. Casey, Cathleen D. Cimino-Isaacs & Michael A. Weber, Cong. Rsch. Serv., IF11360, Section 307 and Imports Produced by Forced Labor 1 (2023). While Congress was initially concerned with protecting domestic industry from goods made with low-cost labor, see Casey et al., supra, at 1, more recent legislation has also grounded this prohibition in humanitarian and human rights concerns, see Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386, §§ 102(b), 112, 114 Stat. 1464, 1466–67, 1486–88 (concluding that human trafficking includes forced labor and "involves significant violations of labor, public health, and human rights standards worldwide," and creating federal crimes related to the use or trafficking of forced labor); Trade Facilitation and Trade Enforcement Act of 2015, Pub. L. No. 114-125, § 910, 130 Stat. 122, 239 (removing an exemption from section 307 that allowed for goods made with forced labor, but with no comparable equivalent for the "consumptive demands of the United States," to be imported). It is against this backdrop that

**CONCLUSION**

Because the UFLPA is a "law . . . providing for . . . embargoes," 28 U.S.C. § 1581(i)(1),

the CIT has exclusive jurisdiction over challenges to agency action implementing the UFLPA

under 28 U.S.C. § 1581(i)(1)(C)–(D).  In the interest of resolving important questions of first

impression and promoting judicial economy before any further proceedings, the court therefore

concludes that Plaintiffs are likely to establish subject matter jurisdiction in this case under §

1581(i)(1)(C)–(D).  In so doing, the court makes no other disposition and no finding of fact.  The

court expresses no view on the other contentions regarding Plaintiffs' Motion for Preliminary

Injunction, which are left to any further proceedings.[12]

/s/        *Gary S. Katzmann*
Gary S. Katzmann, Judge

Dated: <u>November 30, 2023</u>
New York, New York

---

Congress passed the UFLPA.  <u>See</u> Pub. L. 177-78, § 1(4)–(6), 135 Stat. at 1525 (expressing Congress's intent to prevent forced labor, human trafficking, torture, and deprivations of liberty and to address gross human rights violations in Xinjiang).  Grounded in that long history, jurisdiction in today's case is consistent with Congress's intent to establish uniformity in trade law and make use of the CIT's subject matter expertise.  <u>See</u> <u>K Mart</u>, 485 U.S. at 189; <u>Conoco</u>, 18 F.3d at 1589.

[12] Defendants also argue that Plaintiffs are not likely to succeed on the merits of their claim for failure to exhaust administrative remedies, for mootness due to Defendants' filing of the Confidential Administrative Record in this case, and for failure to show that the UFLPA and APA require an explanation beyond the <u>Federal Register</u> notice.  <u>See</u> Defs.' Br. at 15–31.  Defendants further contend that Plaintiffs have not been irreparably harmed and that the public interest and balance of hardships compel a denial of injunctive relief.  <u>See</u> <u>id.</u> at 31–40.  Plaintiffs oppose all of those arguments.  <u>See</u> Pls.' Reply.  The court expresses no view at this time as to any of those arguments.

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 1st day of December 2023, Plaintiff's Notice of Subsequent Authority was filed electronically.  I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

<div align="right">

*/s/ David E. Bond*
David E. Bond

</div>